## State of Vermont v. Thomas Hollis

[633 A.2d 1362]

No. 92-462

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed October 15, 1993

*Karen R. Carroll,* Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellant.

*E.M. Allen,* Defender General, and *William A. Nelson,* Appellate Attorney, Montpelier, for Defendant-Appellee.

**Morse, J.** The State appeals from an order suppressing contraband discarded by defendant at police barracks following a custodial arrest for possession of marijuana discovered during an unlawful search of his vehicle. The question we address is whether suppression of the discarded contraband was error considering that police had the authority to arrest, but did not arrest, defendant for driving with a suspended license (DLS). We affirm.

Acting on a tip, the Windsor Police Department informed the state police on March 8, 1991 that specified individuals, including defendant, would be transporting cocaine into Vermont that day. A computer printout described the vehicle that the suspects would be driving and indicated that defendant's license had been suspended. Based on this information, two state police officers stopped the vehicle shortly after it entered Vermont. Defendant, the driver, displayed a Louisiana driver's license. One officer placed defendant in the police cruiser and ran a license check, which confirmed that his license had been suspended in Vermont for failure to appear in New Hampshire on a

motor vehicle charge. Further investigation revealed that the other three occupants of the vehicle had suspended licenses, and that all of the occupants, including defendant, resided in Windsor.

Stating that he smelled marijuana, the other officer searched the vehicle. Marijuana was discovered. A tape made at the scene of the arrest indicates that the first officer informed defendant as follows: "[Y]our vehicle is going to be towed, the search is going to continue at the State Police Barracks, West Brattleboro. I'm going to issue you a citation for DLS. . . . I'm placing you under arrest for possession of marijuana." At the barracks, defendant was placed in a conference room by himself. At one point, an officer entered the room and discovered a bag containing cocaine and marijuana on the floor. A short time later, defendant was cited and released.

Defendant was charged with felony possession of cocaine, misdemeanor possession of marijuana, and DLS. At the hearing on defendant's motion to suppress, the State conceded that the marijuana found in the vehicle had to be suppressed because the search of the vehicle was unlawful. The State argued, however, that the drugs discovered at the police barracks should not be suppressed because defendant had been lawfully arrested for DLS. The State pointed out that an officer may arrest a person for a misdemeanor if the person's ties to the community are not sufficient to assure that the person will respond to a citation, or if the person has previously failed to appear in response to a citation or other court order. The State argued that defendant was properly arrested for DLS because he was coming from out of state, he presented a license from a different state, and he had failed to appear at a court proceeding in yet another state.

Defendant conceded that the stop was legal, but argued the evidence discovered at the police barracks was the "tainted fruit" of an illegal arrest that directly resulted from an unlawful search. The district court ruled that the evidence must be suppressed because (1) despite the officer's testimony that he arrested defendant for possession of marijuana *and* DLS, the actual ground for the arrest, as stated by the officer at the time the arrest was made, was possession of marijuana; and (2) assuming defendant had also been arrested for DLS, a custodial

arrest would have been improper because the officer's doubts concerning defendant's ties to the community were minimal.

■ On appeal, the State argues that the facts known to the officer at the time of the arrest permitted the police to take defendant to the state police barracks and then release him on a citation after confirming his ties to the community. Defendant responds that, given the court's finding that defendant was arrested for possession of marijuana, not DLS, whether he could have been arrested for DLS is irrelevant. Therefore, according to defendant, the arrest was unlawful and the evidence discovered at the police barracks must be suppressed as the tainted fruit of the illegal arrest. We agree that the contraband discarded at the police station must be suppressed.

At the outset, we note that we cannot affirm the trial court's decision on the ground that an arrest for DLS, even if intended, would not have been lawful. Although the court concluded that a custodial arrest would have been improper because the officer's doubts concerning defendant's ties to the community were minimal, it did not address the State's argument that a custodial arrest for DLS would have been proper under V.R.Cr.P. 3(c)(2)(E) because the officer was aware that defendant had previously failed to appear in response to a citation before another court. We conclude that a custodial arrest for DLS would have been appropriate here under Rule 3(c)(2)(E), which permits arrest or continued custody for a misdemeanor when the "person has previously failed to appear in response to a citation, summons, warrant or other order of court issued in connection with the same or another offense."

While it is true that allowing police to make a custodial arrest for a misdemeanor because of the defendant's prior failure to appear is most likely based on the same rationale as the one allowing an arrest where the defendant's ties to the community are in doubt, the latter does not subsume the former. Compare V.R.Cr.P. 3(c)(2)(D) with V.R.Cr.P. 3(c)(2)(E). In effect, a prior failure to appear, regardless of other factors, creates enough doubt about whether the defendant would respond to a citation to allow a custodial arrest. Further, the fact that defendant ultimately was released on citation would not somehow invalidate an arrest for DLS. The police could have made a custodial arrest for DLS based on defendant's previous failure to appear,

and then released him when they were satisfied that he would appear. See V.R.Cr.P. 3(c)(1) (citation must be issued once reasons for custodial arrest no longer exist).

Our determination that the officer could have arrested defendant for DLS does not end our inquiry, however. We must address whether the arresting officer's actual motives or stated grounds for the arrest may be considered in determining whether the arrest broke the causal link between the unlawful search and the discovery of the contraband at the police station. Although we have recently followed the majority of the federal circuits, which limit Fourth Amendment analysis to examining "the objective legality of the arrest," *State v. Towne*, 158 Vt. 607, 628–30, 615 A.2d 484, 496-97 (1992), we have not addressed this issue in the precise context presented here.

In *Towne*, the defendant argued that his warrantless arrest on a federal firearms charge was a mere pretext for interrogating him regarding a murder he was suspected of committing, and therefore was unlawful. We held that regardless of the officer's underlying motive for the arrest, the arrest was valid because (1) the officer had probable cause to believe defendant was carrying a firearm in violation of federal law, and (2) the warrantless arrest was authorized by state law. *Id.* at 630, 615 A.2d at 497. We followed this two-part objective test because we recognized that it was more consistent with United States Supreme Court precedent than the test followed by the Tenth and Eleventh Circuits, which seeks to determine whether an arrest or stop *would* have been made absent the allegedly improper motive. *Id.* at 630 n.3, 615 A.2d at 497 n.3 (citing *Scott v. United States*, 436 U.S. 128, 136 (1978)).*

In *Scott*, the defendants sought suppression of all evidence gathered as the result of a wiretap on the grounds that the officers admitted they made no attempt to comply with a statutory requirement that the number of intercepted calls be minimized. The defendants argued that the government's post-hoc expla-

---

* The defendant in *Towne* did not suggest that a pretext analysis would differ under the Vermont Constitution, and we did not reach that issue. See *id.* at 630 n.4, 615 A.2d at 497 n.4. Similarly, the parties here do not invoke the Vermont Constitution, and we do not consider an independent analysis under our constitution.

nation of the reasonableness of intercepting most of the calls could not show compliance with the law because "having been prepared after the fact by a Government attorney and using terminology and categories which were not indicative of the agents' thinking at the time of the interceptions, [the explanation] does not reflect the perceptions and mental state of the agents who actually conducted the wiretap." *Scott*, 436 U.S. at 135.

The Court acknowledged that the motives of an officer play some part in determining the application of the exclusionary rule *after* a statutory or constitutional violation has been established, but determined that the existence of such a violation turns on an objective assessment of the officer's actions in light of the facts and circumstances at the time the officer acted, regardless of the underlying intent or motivation of the officer. *Id.* at 135–38. "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* at 138.

This principle has been accepted by courts and commentators in a wide variety of circumstances. See *id.* at 138 n.12; 1 W. LaFave, Search and Seizure § 1.4(b), at 83 (2d ed. 1987) (principle set forth in *Scott* should control in resolving suppression issues arising from exclusionary rule). For instance, this Court and other courts have generally disregarded the underlying motives of the arresting officer in cases where there is legal justification for arrest on the stated grounds. See *Towne*, 158 Vt. at 628–30, 615 A.2d at 496–97 (cases cited therein).

Courts have also upheld arrests based on this principle where there was no probable cause to arrest on the stated ground but there was probable cause to arrest for another offense. See, e.g., *United States v. Lester*, 647 F.2d 869, 873 (8th Cir. 1981) (even if arrest for detoxification was unlawful, probable cause existed to arrest defendant for assault); *United States v. Carr*, 445 F. Supp. 1383, 1387 (D. Conn.) (existence of probable cause to arrest defendant for illegal possession of firearms justified warrantless search despite officer's testimony that arrest was for reckless endangerment, for which there was no probable cause), *aff'd*, 584 F.2d 612 (2d Cir. 1978); *Hamm v. State*, 527

A.2d 1326, 1330–31 (Md. Ct. Spec. App. 1987) (assuming officer did not have probable cause to arrest defendant for stated ground—unathorized use of automobile—he had probable cause to arrest for weapons violation); cf. *State v. Klevgaard*, 306 N.W.2d 185, 192 (N.D. 1981) (because suspected burglar could have been arrested for reckless driving, initial arrest was legal despite failure of officer to state ground for arrest); *State v. Retford*, 281 S.E.2d 471, 472–73 (S.C. 1981) (fruits of search incident to arrest properly admitted where probable cause existed to arrest defendant for auto theft, though stated ground was tampering with automobile).

■ These cases stand for the proposition that the validity of an arrest hinges upon whether the officer had probable cause to arrest, not whether the officer articulated the correct basis for the arrest. Thus, when an officer's arrest is properly supported by probable cause to arrest for a particular offense, neither the officer's subjective reliance on an offense for which there is no probable cause, nor the officer's verbal announcement of the wrong offense, vitiates the arrest. *People v. Kincy*, 435 N.E.2d 831, 834–35 (Ill. App. Ct. 1982) (although officer's stated ground for arrest—unlawful use of weapons—was not supported by probable cause, there was probable cause to arrest defendant for aggravated assault); see *Richardson v. Bonds*, 860 F.2d 1427, 1430 (7th Cir. 1988) ("While an arresting officer's subjective knowledge of *facts* sufficient to constitute probable cause is central to evaluation of the propriety of an arrest, we do not believe that the officer's view of the *legal basis* for the arrest is important.").

■ Nevertheless, while the courts generally employ an objective standard in assessing the legal basis for an arrest, they will not "indulge in *ex post facto* extrapolations of all crimes that might have been charged on a given set of facts at the moment of arrest." *United States v. Atkinson*, 450 F.2d 835, 838 (5th Cir. 1971). In order to prevent post-hoc justifications for otherwise invalid arrests, *Atkinson* limited the two-part objective test by holding that where probable cause does not exist for the articulated offense, there is a valid arrest only if that offense, and the offense for which there was probable cause, are related. *Id.* According to the court, an arrest is valid when there

is a nexus between the crime charged and the crime for which probable cause exists because "[a]ny other rule would force police officers to routinely charge every citizen taken into custody with every offense they thought he could be held for." *Id.*

Several courts have followed the *Atkinson* rule. See, e.g., *United States v. Rambo*, 789 F.2d 1289, 1294 (8th Cir. 1986) (contraband admissible because police could have arrested defendant for violating undesirable-guest statute, an offense closely related to charged offense of disorderly conduct); *United States v. Martinez*, 465 F.2d 79, 82 (2d Cir. 1972) (agents had probable cause to arrest for crime of transferring marijuana without written order form, which is closely related to charged crime of selling marijuana); *C-1 v. City of Horn Lake*, 775 F. Supp. 940, 945-46 (N.D. Miss. 1990) (insufficient nexus between offense of disorderly conduct and offense of trespassing); *State v. Sparks*, 422 S.E.2d 293, 295 (Ga. Ct. App. 1992) (though officer arrested defendant for littering in violation of county ordinance, that did not authorize custodial arrest; seized drugs were not fruit of poisonous tree because officer could have arrested defendant for illegal dumping under state statute); *State v. Smith*, 452 N.W.2d 86, 89–90 (N.D. 1990) (even if no probable cause existed to stop felon, who was eventually convicted of possession of firearms, for an open-container violation, officer could have stopped felon for unlawful deposit of refuse).

Generally, offenses are related when "the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause." *Trejo v. Perez*, 693 F.2d 482, 486 (5th Cir. 1982); see *State v. Smith*, 452 N.W.2d at 90 (unlawful deposit of refuse, offense upon which arrest was justifiable, and open-container violation, the stated grounds for the arrest, were related offenses because they arose from same set of factual circumstances); *Richardson v. Bonds*, 860 F.2d at 1431 (court may reject as unreasonable an ex post facto rationale for arrest "which is extravagant or novel, or which is based on 'stale' facts that could have formed the basis for an earlier arrest"); *People v. Corrigan*, 473 N.E.2d 140, 144 (Ill. App. Ct. 1985) (ex post facto grounds for arrest proper if known to officer at time of arrest and if interrelated to, and occurring contemporaneously with, grounds stated by officer).

The law considered thus far may be summed up as follows: the motives of arresting officers are irrelevant (1) when there is probable cause and legal justification for the offense stated as the basis for the arrest, or (2) when there is no probable cause or legal justification to arrest based on the grounds stated by the officer but the stated offense and the offense for which there is probable cause and legal justification are reasonably related.

Neither situation is present here. In this case, the arresting officer was aware that defendant had been operating a vehicle with a suspended license but chose not to arrest him on that charge. Rather, the arrest was based on a drug charge that stemmed from an illegal search. The district court relied on the transcript of the arresting officer's statement to defendant in concluding that the officer's sole basis for the arrest was the drug charge resulting from that search. This finding is supported by the evidence. More importantly, the conduct that served as the basis for the charge—possession of contraband—could not have served as the basis for the DLS charge. See *Trejo v. Perez*, 693 F.2d at 486.

Therefore, the fruit of the tainted search and subsequent arrest must be suppressed. See *State v. Badger*, 141 Vt. 430, 439–40, 450 A.2d 336, 342 (1982) (evidence must be suppressed unless causal nexus between illegal police conduct and procurement of evidence has become so attenuated by intervening events as to dissipate the taint). The State may not employ a post-hoc rationalization for an arrest stemming from an illegal search to break the causal link between the illegal conduct and the subsequently discovered evidence. See *Scott v. United States*, 436 U.S. at 135–36 ("In view of the deterrent purposes of the exclusionary rule, consideration of official motives may play some part in determining whether application of the exclusionary rule is appropriate *after* a statutory or constitutional violation has been established.").

Finally, we need not consider whether the apparent abandonment of the contraband at the police station was a voluntary abandonment that purged the taint of the illegal arrest, as that argument was never raised by the State. Cf. *Lawrence v. Henderson*, 478 F.2d 705, 708 (5th Cir. 1973) (where illegal arrest prompted defendant to conceal narcotics paraphernalia in po-

lice vehicle, abandonment was not voluntary); *Commonwealth v. Harris*, 421 A.2d 199, 202 (Pa. 1980) (in 4-3 decision, court held that defendant's abandonment of incriminating evidence in police station's toilet was not an intervening, independent act of free will sufficient to purge taint of illegal arrest).

*Affirmed.*

**Allen, C.J.,** dissenting. I agree with the majority's conclusion that arrest or continued custody would have been appropriate under the facts presented pursuant to V.R.Cr.P. 3(c)(2)(E), but believe that this conclusion requires a different result.

The officer was in possession of information indicating that defendant's license was under suspension. Following the stop, he asked defendant to exit his vehicle while the officer performed a license check to determine whether defendant had a valid license; the officer learned from that check that the license was under suspension for failure to appear in New Hampshire. He was concerned about defendant's ties to the community because defendant was claiming to be a Vermont resident but had a Louisiana driver's license and was coming from Massachusetts. The officer clearly had probable cause to believe that a misdemeanor had been committed in his presence and could continue the custody of defendant for the purpose of determining whether his community ties were sufficient to assure his appearance. V.R.Cr.P. 3(c)(2)(D),(E). The officer testified that defendant was in his custody for driving with a suspended license (DLS), in violation of 23 V.S.A. § 674.

The evil that the line of cases beginning with *United States v. Atkinson*, 450 F.2d 835 (5th Cir. 1971), seeks to prevent is a sham arrest at the outset which is totally unrelated to the crime for which probable cause to arrest exists. The facts here do not suggest post-hoc justification for an otherwise invalid arrest condemned in *Atkinson*. It is unnecessary in this case to conduct an *Atkinson* inquiry as to whether the officer "could have" arrested for a related crime. The initial detention was for DLS; the continued custody was for the purpose of determining whether the Rule 3(c)(2) exceptions applied. A citation to appear was issued for both DLS and possession of marijuana, and defendant was ultimately charged with both. While the arrest

for marijuana possession may have been unlawful, continued custody to determine whether the V.R.Cr.P. 3(c)(2) exceptions applied for the DLS offense was lawful. I would reverse.