693 A.2d 1150

**Bruce Lamont DENNIS**

v.

**STATE of Maryland.**

**No. 18, Sept. Term, 1995.**

Court of Appeals of Maryland.

May 19, 1997.

George E. Burns, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Mary Ellen Barbera, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Submitted to BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

BELL, Chief Judge.

In *Dennis v. State*, 342 Md. 196, 674 A.2d 928 (1996), we were presented with "the issue of whether a passenger in a vehicle whose driver has been stopped by police for a traffic violation may be convicted of disorderly conduct and battery when, rather than heeding the police command to remain in the vehicle, he walks away from the scene, and subsequently resists police attempts at detention." *Id.* at 198, 674 A.2d at 929. We held "that to justify detaining the passenger, the officer must have a reasonable suspicion that the passenger engaged in criminal behavior and must have intended to conduct further investigation based on that suspicion." *Id.* at 211–12, 674 A.2d at 935. In that regard, we observed:

In the case *sub judice*, the record reflects that once the driver stopped the fleeing vehicle, the petitioner got out and began walking away from the scene, disregarding Officer Foskey's command to stop. Officer Foskey could have concluded from that conduct that the petitioner was fleeing the scene. While fleeing from a police officer or disregarding a police officer's command to stop, in and of itself, does not give rise to probable cause or even a reasonable suspicion sufficient to justify the use of force to detain the person fleeing, . . . where that person is a passenger in the automobile as the driver attempts to flee from and elude the police, a police officer reasonably and objectively could entertain a suspicion that he was an active and willing participant with the driver in that attempt. In the instant case, however,

that suspicion was not what prompted the officer to detain the petitioner. It was solely because the officer felt he would be safer if the petitioner were detained.

*Id.* at 210, 674 A.2d at 935 (citing *Watkins v. State,* 288 Md. 597, 604, 420 A.2d 270, 274 (1980)).

We made clear, however, that

[t]he prosecutor, rather than the officer, articulating a reasonable suspicion, justified by the record, on which the officer may have acted, may not be sufficient for a *Terry [v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ] stop. It clearly is not sufficient in the instant case, where a stop for the officers' safety, rather than a *Terry* investigative stop, was intended. There is no articulated reason why the officers would be safer by detaining the petitioner, rather than simply allowing him to walk away from the scene.

*Id.* at 211, 674 A.2d at 935. Moreover, we also pointed out that "we [were] not holding ... that a passenger in an automobile whose driver has fled from and eluded the police has an unfettered right to ignore a police officer's commands to stop." *Id.* at 211–12, 674 A.2d at 935.

The State of Maryland filed a petition for a writ of certiorari, asking the United States Supreme Court to review this Court's judgment. That Court granted the State's petition, vacated this Court's judgment, and remanded the case to this Court for further consideration in light of *Whren v. United States,* 517 U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). *Maryland v. Dennis,* 517 U.S. ——, 117 S.Ct. 40, 136 L.Ed.2d 4 (1996).

In *Whren,* the issue, as articulated by Justice Scalia, who authored the opinion for a unanimous Court, was "whether the temporary detention of a motorist who the police have probable cause to believe has committed a civil traffic violation is inconsistent with the Fourth Amendment's prohibition against unreasonable seizures unless a reasonable officer would have been motivated to stop the car by a desire to enforce the traffic laws." *Id.* at ——, 116 S.Ct. at 1772, 135 L.Ed.2d at 94. In that case, accepting that there was probable cause to make

the traffic stop, the petitioners argued, instead, that, " 'in the unique context of civil traffic regulations' probable cause is not enough." *Id.* at ——, 116 S.Ct. at 1773, 135 L.Ed.2d at 96. Their concerns, as interpreted by the Court, were:

> Since ... the use of automobiles is so heavily and minutely regulated that total compliance with traffic and safety rules is nearly impossible, a police officer will almost invariably be able to catch any given motorist in a technical violation. This creates the temptation to use traffic stops as a means of investigating other law violations, as to which no probable cause or even articulable suspicion exists.

*Id.* at ——, 116 S.Ct. at 1773, 135 L.Ed.2d at 96. Stated differently, the petitioners' focus was on determining what the arresting officer may have been thinking but did not articulate, rather than on what he or she, in fact, did articulate. The solution proposed by the petitioners was to substitute for the established Fourth Amendment test of whether there was probable cause for the stop, a new test of "whether a police officer, acting reasonably, would have made the stop for the reason given." *Id.* at ——, 116 S.Ct. at 1773, 135 L.Ed.2d at 96.

The Court recognized that the petitioners' proposed test was motivated by their concern that the police action not be a pretext. Rejecting the petitioners' argument and proposed test, the Court pointed out that its cases [1] "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Id.* at ——, 116 S.Ct. at 1774, 135 L.Ed.2d at 98. *See also Ohio v. Robinette,* 519 U.S. ——, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Moreover, the Court expressed concern over the fact that such a test "is plainly and indisput-

---

1. The cases to which the Court referred were: *United States v. Villa-monte–Marquez,* 462 U.S. 579, 584, n. 3, 103 S.Ct. 2573, 2584, n. 3, 77 L.Ed.2d 22, 28, n. 3 (1983); *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida,* 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456, 461 (1973); *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 178 (1978).

ably driven by subjective considerations," *id.* at ——, 116 S.Ct. at 1774, 135 L.Ed.2d at 98, and asks more of the Court than would be the case had the focus been confined to the actions of the individual officer. *Id.* As the Court put it:

> [I]t seems to us somewhat easier to figure out the intent of an individual officer than to plumb the collective consciousness of law enforcement in order to determine whether a "reasonable officer" would have been moved to act upon the traffic violation. While police manuals and standard procedures may sometimes provide objective assistance, ordinarily one would be reduced to speculating about the hypothetical reaction of a hypothetical constable—an exercise that might be called virtual subjectivity.

*Id.* at ——, 116 S.Ct. at 1775, 135 L.Ed.2d at 99.

The issue in this case is different from the issue presented and resolved by the Court in *Whren,* and, thus, *Whren* is not dispositive. In the instant case, what Dennis challenged was his detention without probable cause when the police did not wish to make an investigative stop but, instead, stated they wished to detain him "for the officer's safety." It is noteworthy that subsequent to its decision in *Whren,* the Supreme Court indicated that the question resolved in the instant case, whether "an officer may forcibly detain a passenger for the entire duration of [a traffic] stop," remains open. *Maryland v. Wilson,* 519 U.S. ——, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). In *Wilson,* the Supreme Court held that a police officer may order passengers to get out of a car during a traffic stop. The Court noted, however, that it was expressing no opinion on the validity of the forcible detention of passengers. *Id.* at ——, n. 3, 117 S.Ct. at 886, n. 3, 137 L.Ed.2d at 48, n. 3. The issue decided in the instant case was not addressed by the Supreme Court in *Whren,* and was left expressly undecided in *Wilson.*

What we clearly concluded in the instant case is that there was no reason articulated or indicated as to why it was necessary to detain Dennis "for the officer's safety," and the detention could not be justified on any other basis. First, there was no probable cause to arrest Dennis. Second, al-

though the officer might have had a reasonable suspicion adequate to make an investigative stop pursuant to *Terry v. Ohio*, the officer did not intend to question Dennis, and a *Terry* investigative stop was not the basis for Dennis's detention. Without some explanation, we were unable to determine why it was safer for the officer to detain Dennis rather than allow him to walk away from the scene. Our holding resulted from the officer's indication that he did not make an investigative stop and was not motivated by any suspicion that Dennis was involved in illegal activity. We recognized that the officer might have had a basis for a *Terry* stop, but noted that the officer's stop was made only because of his unexplained belief that detaining Dennis was safer for the officer than letting Dennis leave the scene. There was no intent to interrogate Dennis as might have been permitted by *Terry* and no indication why Dennis should be stopped for the officer's safety. This analysis is perfectly consistent with the *Whren* analysis.

Having reconsidered this case in light of the principles enunciated in *Whren* and finding them inapposite, we reaffirm our prior holding and opinion.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY SOMERSET COUNTY.*

RAKER, Judge, dissenting.

The United States Supreme Court vacated the judgment in this case and remanded it to this Court for further consideration in light of *Whren v. United States*, 517 U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Upon reconsideration, the majority reasons that our analysis in *Dennis v. State*, 342 Md. 196, 674 A.2d 928 (1996) (*Dennis I*), is "perfectly consistent with the *Whren* analysis." Maj. op. at 1152. The majority concludes: "Having reconsidered this case in light of the principles enunciated in *Whren* and finding them inapposite,

we reaffirm our prior holding and opinion." Maj. op. at 654. I respectfully dissent.

I believe that our approach in *Dennis I* is inconsistent with the rationale underpinning *Whren* and, in my view, is the reason the Supreme Court directed this Court to reconsider the case. The analysis applied by this Court in *Dennis I* is not the objective assessment contemplated by *Whren*. I believe that, consistent with the direction of the Supreme Court to reconsider this case in light of *Whren*, this case should be set in for reargument, with the parties directed to brief and argue two issues: (1) whether the legality of a *Terry* stop is to be assessed by the objective facts known to the investigating officers rather than the justification articulated by them; and (2) if the test is an objective one, whether the stop was lawful under the circumstances.

In *Whren*, the Supreme Court held that the constitutional reasonableness of a traffic stop does not depend on the actual motivation of the individual police officer involved, but instead depends upon whether the circumstances, viewed objectively, justify the action. *See Whren*, 517 U.S. at ——, 116 S.Ct. at 1774, 135 L.Ed.2d at 98. The Court stated that "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Id.* at ——, 116 S.Ct. at 1775, 135 L.Ed.2d at 98 (emphasis in original).

In *Dennis I,* this Court applied a subjective test rather than an objective test to determine whether the officer's conduct was justified. We recognized that Officer Foskey could have concluded from Dennis' conduct that he was fleeing the scene, that Dennis was an important witness to an incarcerable traffic incident that had just transpired, or that there may well have been sufficient evidence in the record from which the officer could have possessed a reasonable, articulable suspicion that Dennis aided and abetted the driver. Nonetheless, the Court determined that the stop was unlawful because the officer failed to *articulate* that he intended the stop to be on any of those specific bases. Furthermore, this Court stated:

"Indeed, such an articulation is a condition precedent to a judicial determination that a reasonable suspicion justified the officer's conduct." *Dennis*, 342 Md. at 209, 674 A.2d at 934. We reasoned that "[i]nasmuch as [Officer Foskey] did not, as the State recognized, articulate the requisite reasonable suspicion *Terry* requires, it is clear that Officer Foskey did not contemplate an investigatory stop with the petitioner as its object." *Id.* at 208, 674 A.2d at 934. The Court further concluded that even though the prosecutor articulated a reasonable suspicion on which the officer may have acted, and that suspicion was justified by the record, the *Terry* stop was invalid because no *Terry* investigative stop was intended. *Id.* at 211, 674 A.2d at 935. In conflict with this holding, the Court stated: "We need not, however, decide in the instant case, whether the officer must articulate specifically the basis for the stop in order to permit the court to conclude that a *Terry* stop was justified."[1] *Id.* at 210, 674 A.2d at 935.

---

1. In the State's Petition for Writ of Certiorari in the Supreme Court of the United States, the State urged:

> Regardless of the disposition in *Maryland v. Wilson*, this Court should grant the instant petition and vacate and remand the case in light of this Court's recent decision in *Whren v. United States*, 517 U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In *Whren*, this Court held that the constitutional reasonableness of traffic stops is dependent not on the actual motivations or subjective intentions of the officers involved but, rather, on whether the "circumstances, viewed objectively, justify that action." *Id.* at ——, 116 S.Ct. at 1774. This Court stated that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis ... the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent." *Id.*

> The decision of the Court of Appeals of Maryland directly contravenes this principle insofar as the court deemed determinative not the objective circumstances of the stop but the subjective intention of the police officer effectuating the stop. (App. 14a-15a). The court held: "It is not enough that the record contains facts on the basis of which a police officer could entertain a reasonable, articulable suspicion sufficient to justify an investigatory stop, however. *Terry* requires more. The police officer must intend the stop to be an investigative stop, not a detention for safety purposes." (App. 15a). The decision of the Court of Appeals of Maryland in this regard, therefore, should be reversed in accordance with *Whren*.

The Supreme Court has not directly addressed the issue of whether the legality of a *Terry* stop is to be assessed by the objective facts known to the investigating officers rather than the justification articulated by them. In fact, the State argued in its Motion for Reconsideration of *Dennis I*, filed April 10, 1996, that the officer need not articulate suspicions of criminality on the passenger's part, but rather that "the record need only demonstrate that a reasonable officer in the stopping officer's situation would have been suspicious." The State urged that this Court reconsider its opinion (*Dennis I*) to hold that *Terry* does not require an officer subjectively to harbor, and to articulate, a reasonable suspicion of criminality before engaging in a *Terry* stop, and that the record supports the *Terry* stop that occurred in this case.[2]

Courts that have considered this issue are not unanimous in their resolution of this question, although the majority view seems to support the argument of the State. *See, e.g.,* 1 LAFAVE, SEARCH & SEIZURE, § 1.4(d) & n.82 (3d ed. 1996). For example, in *United States v. Hawkins*, 811 F.2d 210 (3d Cir. 1987), the Third Circuit rejected Hawkins' argument that because the officers testified that their sole reason for investigating the car was the alleged traffic violation, and that because the trial court did not believe this testimony, the stop was unlawful.[3] The trial court held that the justification

---

*Dennis v. Maryland*, 342 Md. 196, 674 A.2d 928 (1996), *petition for cert. filed*, 65 U.S.L.W. 3085 (U.S. July 18, 1996) (No. 96-112).

**2.** I do not address the separate question of whether the police may order passengers to remain in the car for a reasonable period of time while they conduct their investigation, a question left open and undecided by the Supreme Court in *Maryland v. Wilson*, —— U.S. ——, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

**3.** In *United States v. Hawkins*, 811 F.2d 210 (3d Cir. 1987), the Third Circuit rejected a distinction between arrest cases and investigatory stops, and responded to the contrary view expressed in the dissent:

The dissent suggests that while an objective standard may be appropriate for arrest cases, where the issue is probable cause, only a subjective standard is appropriate for investigatory stops, which are judged under a reasonable suspicion inquiry. We do not find this distinction persuasive. The probable cause and reasonable suspicion

articulated by the officers at the suppression hearing was insufficient to justify the *Terry* stop, but denied the motion to suppress because the events that the officers observed provided reasonable suspicion to support the stop. *Hawkins*, 811 F.2d at 212. The Third Circuit affirmed the trial court and held that "the legality of a stop must be judged by the objective facts known to the seizing officers rather than by the

---

tests are similar in that they both look to the incriminating facts known to the seizing officer to determine the validity of a "seizure" under the Fourth Amendment. *See Terry*, 392 U.S. at 16–20, 88 S.Ct. at 1877–79. Thus, in *United States v. Hensley*, 469 U.S. [221] at 230–33, 105 S.Ct. [675] at 681–83, [83 L.Ed.2d 604 (1985)], an investigatory stop case, the Supreme Court relied interchangeably on arrest and stop cases.
*Id.* at 215 n.5.

This approach of analyzing probable cause and reasonable suspicion in a similar fashion is supported by the recent Supreme Court decision of *Ornelas v. United States*, —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In that case, the Supreme Court granted certiorari to consider the applicable standard of appellate review of the trial court's determination of both reasonable suspicion and probable cause. *Id.* at ——, 116 S.Ct. at 1661, 134 L.Ed.2d at 918. The Court held that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *Id.* at ——, 116 S.Ct. at 1663, 134 L.Ed.2d at 920. In this regard, the Court treated the concepts of reasonable suspicion and probable cause alike. The Court defined reasonable suspicion simply as "a particularized and objective basis" for suspecting the person stopped of criminal activity. *Id.* at ——, 116 S.Ct. at 1661, 134 L.Ed.2d at 918. If the standard of appellate review is *de novo*, a strong argument can be made that it matters not what the officer articulates, so long as the record demonstrates, from the standpoint of an objectively reasonable police officer, reasonable suspicion or probable cause for his or her actions.

It has long been the law in Maryland that the validity of an arrest depends upon whether the officer had probable cause to arrest, not whether the officer articulated the correct basis for the arrest. *See Herod v. State*, 311 Md. 288, 299, 534 A.2d 362, 367 (1987) (holding that reviewing court is not limited to the legal basis for the stop of the auto as articulated by the officer; officer's subjective legal intent is not controlling); *Braxton v. State*, 234 Md. 1, 6, 197 A.2d 841, 844 (1964); *Hamm v. State*, 72 Md.App. 176, 184, 527 A.2d 1326, 1330 (1987). *See also Gadson v. State*, 341 Md. 1, 9–10, 668 A.2d 22, 26–27 (1995); *Watkins v. State*, 288 Md. 597, 606, 420 A.2d 270, 275 (1980). *See generally* 1 LAFAVE, *supra*, § 1.4(d) (reasoning that exclusion based on officer's mistaken grounds for arrest is "unjustified ... because such situations are often attributable to complicated legal distinctions between offenses or an officer's failure to record all the bases or the strongest basis upon which the arrest was made.").

justifications articulated by them." *Id.* at 213. The appellate court further concluded that a Fourth Amendment inquiry focuses on the objective facts known to the officer rather than the officer's state of mind, and that an investigatory stop is lawful when the officer has a "particularized and *objective basis* for suspecting [a] particular person stopped of criminal activity." *Id.* (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)) (emphasis added by Court of Appeals for the Third Circuit).

In *State v. Mitchell,* 80 Wash.App. 143, 906 P.2d 1013 (1995), in response to the appellant's argument that the search was unlawful because the officer did not articulate a reasonable suspicion, the court found that the facts of the case supported a reasonable suspicion of criminal activity. *Id.* 906 P.2d at 1016. The intermediate appellate court held that "the existence of such reasonable suspicion is determined based on an objective view of the known facts, and is not dependent upon the officer's subjective belief or upon the officer's ability to correctly articulate his or her suspicion in reference to a particular crime." *Id.*

Similarly, in *Marbury v. United States,* 540 A.2d 114 (D.C. 1985), the District of Columbia Court of Appeals held that upon review of the record, the circumstances known to the officer at the time of the stop, viewed objectively, warranted his actions. *Id.* at 115. The Fourth Amendment's prohibition against unreasonable seizures requires only objective reasonableness, and the officer's asserted reason for his actions is not controlling. *Id.* at 115–16.

On the other hand, some courts have adopted the view that "an investigative stop can be justified based on an objectively reasonable suspicion of any offense, provided that the offense for which reasonable suspicion exists is related to the offense articulated by the officer involved." *State v. Bolosan,* 78 Hawai'i 86, 890 P.2d 673, 681 (1995) (based on Article I, § 7 of the Hawaii Constitution); *State v. Hollis,* 161 Vt. 87, 633 A.2d 1362, 1366 (1993); *cf. United States v. Atkinson,* 450 F.2d 835, 838 (5th Cir.1971). Relying specifically on Article I, Section

10 of the Minnesota Constitution, the Minnesota Supreme Court held that in order to justify a stop to investigate for criminal wrongdoing, the officer must be able to articulate at the court hearing that "he or she had a particularized and objective basis for suspecting the seized person of criminal activity." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995).

The strong weight of federal and state authority, however, synthesize the Supreme Court's precedents to conclude that a police officer need not articulate a subjective reasonable belief where the surrounding circumstances of the investigatory stop provide objective reasonable suspicion. So long as the record indicates that there was a proper legal basis to justify the stop, the officer's subjective motivation or his stated intention does not render the stop unlawful. This Court should review *Dennis I* in light of this standard.

This Court disregards the rationale of *Whren* when it suggests that our opinion in *Dennis I* is perfectly consistent with *Whren*. *Whren* stands for the proposition that in determining the legitimacy of police conduct under the Fourth Amendment, a court must look to objective circumstances, and not the subjective motivations of the police officer. The Supreme Court reiterated in *Whren* a proposition that it established in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973): "The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Whren*, 517 U.S. at ——, 116 S.Ct. at 1774, 135 L.Ed.2d at 98. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* *See also Ohio v. Robinette*, —— U.S. ——, ——, 117 S.Ct. 417, 420, 136 L.Ed.2d 347, 354 (1996) (stating that "[w]e think that under our recent decision in *Whren v. United States*, 517 U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) . . . the subjective intentions of the officer did not make the continued detention of respondent illegal under the Fourth Amendment.").

The majority recognizes that the record in this case may very well evidence objective circumstances that would justify the actions of Officer Foskey, but refuses to reconsider the case under an objective test. The majority, stating "what we clearly concluded in the instant case," rewrites *Dennis I*. The majority says we clearly concluded

> that there was no reason articulated or indicated as to why it was necessary to detain Dennis "for the officer's safety," and the detention could not be justified on any other basis. First, there was no probable cause to arrest Dennis. Second, although the officer might have had a reasonable suspicion adequate to make an investigative stop pursuant to *Terry v. Ohio*, the officer did not intend to question Dennis, and a *Terry* investigative stop was not the basis for Dennis's detention. Without some explanation, we were unable to determine why it was safer for the officer to detain Dennis rather than allow him to walk away from the scene. Our holding resulted from the officer's indication that he did not make an investigative stop and was not motivated by any suspicion that Dennis was involved in illegal activity. We recognized that the officer might have had a basis for a *Terry* stop, but noted that the officer's stop was made only because of his unexplained belief that detaining petitioner was safer for the officer than letting petitioner leave the scene. There was no intent to interrogate Dennis as might have been permitted by *Terry* and no indication why petitioner should be stopped for the officer's safety. This analysis is perfectly consistent with the *Whren* analysis.

Maj. op. at 1152. First, we noted in *Dennis I* that the issue framed by the parties concerns the scope and application of *Terry*. *Dennis*, 342 Md. at 204, 674 A.2d at 932. Second, contrary to the assertion of the majority, this Court never said in *Dennis I* that the detention could not be justified on any other basis. Third, Officer Foskey never testified that he did not intend to question Dennis. Fourth, Officer Foskey never testified that he was not motivated by any suspicion that Dennis was involved in illegal activity. And finally, Officer

Foskey did not testify that the stop was made *only* because of his belief that it was safer to keep Dennis in the car rather that let him leave. A reading of our *Dennis I* opinion leads to the inescapable conclusion that the basis of the Court's opinion was the failure of the officer to articulate "a reasonable suspicion that [Dennis] was engaged in the criminal conduct for the investigation of which the stop was made." *Id.* at 208, 674 A.2d at 934. The Court went on to state: "Inasmuch as he did not, as the State recognized, articulate the requisite reasonable suspicion *Terry* requires, it is clear that Officer Foskey did not contemplate an investigatory stop with the petitioner as its object." *Id.* This conclusion is repeated throughout. *Id.* at 209, 211–12, 674 A.2d at 934–36.

The foundation of the majority's decision is the subjective intention of the officer. This is the very issue the Supreme Court directed that we reconsider.