[No. 15954-0-III.   Division Three.   November 18, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. EFRAIN MENDEZ, *Appellant*.

*Hugh M. Spall, Jr.*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Lauri M. Boyd, Deputy*, for respondent.

KURTZ, J. — Sixteen-year-old Efrain Mendez was a passenger in a car stopped by police for a stop sign violation. The driver and Mr. Mendez immediately got out of the car. Following police protocol, the approaching officer twice ordered Mr. Mendez to get back in the car. Instead of doing this, he initially walked and then ran away. After a brief chase, he was caught and arrested for obstructing an officer. A search incident to the arrest turned up a marijuana pipe, which Mr. Mendez admitted was his after being advised of his *Miranda*[1] rights. On appeal, the principal issue before the court is whether a passenger in a vehicle whose driver has been stopped for a traffic violation may be convicted of obstructing a police officer when, instead of heeding police commands to get back into the vehicle, he leaves the scene. We hold that an officer making a traffic stop may order passengers to stay in the car pending completion of the stop. Consequently, we affirm his convictions for obstructing a police officer and possession of drug paraphernalia.

## FACTS

On February 9, 1996, Yakima Police Officers Benny Hensley and Rick Hartman were on routine patrol near Davis High School. Shortly before 1:00 P.M., Officer Hensley saw a car run a stop sign. He activated his overhead

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966).

lights and within seconds the offending vehicle pulled off the roadway into a car wash lot. The driver and front seat passenger immediately got out of the two-door car and the passenger, Mr. Mendez, started walking away. Two passengers in the back seat stayed put. Both officers also immediately got out of their patrol vehicle. Officer Hensley called out loudly "Get back in the car." The driver remained standing by his door; Mr. Mendez looked back briefly and continued walking away. Officer Hensley again commanded "Get back in the car." The driver obeyed; Mr. Mendez looked back again, then turned away and began running. Officer Hartman ran after him and, when he caught up with him, placed him under arrest for "obstructing."

In a search incident to the arrest, the officer discovered a small pipe in one of Mr. Mendez's pockets. At the police station, the officer read Mr. Mendez his rights from a *Miranda* card and obtained from him an admission that the pipe was his and he had used it to smoke marijuana.

Mr. Mendez was charged with obstructing a public servant and possessing drug paraphernalia. He moved to suppress both the evidence and his statement, arguing he was illegally seized and his statement was not voluntary. At the combined suppression and adjudication hearing, the police officers acknowledged they did not suspect Mr. Mendez of any criminal activity. They testified it was departmental policy, their number one rule, to keep all occupants of a stopped vehicle inside the vehicle for officer safety.

When Officer Hartman was asked how Mr. Mendez hindered and delayed him in his official duties by simply walking away, he testified he felt Mr. Mendez was putting both officers in danger and at risk by leaving the scene. When asked why, Officer Hartman suggested there could have been weapons present because "these guys appeared to be in a gang, based on their clothing—" and he had known gang members to carry weapons. Previously, Officer Hartman had testified Mr. Mendez was wearing:

"Regular clothes, baggy clothes. I don't recall the color or specifics."

Officer Hensley recalled that Mr. Mendez, when he first turned around after being told to get back in the car, had looked at him and "with his hands just kind of fumbled with his shirt, or jacket, whatever he had on." Officer Hensley did not testify that he felt in any personal danger from Mr. Mendez, although he called for a backup as a safety precaution because he was left alone with three people in the car when Officer Hartman took off in hot pursuit. When Officer Hensley was asked if Mr. Mendez's flight hindered him in his processing of the traffic citation, he testified the only thing that might have been a hindrance was the fact his attention was divided and he might not have focused on the driver as fully as he otherwise would have. Officer Hensley acknowledged there would have been not even that slight hindrance to issuing the citation had Officer Hartman simply allowed Mr. Mendez to walk away and not given chase.

The court found Mr. Mendez guilty of obstructing the police officers and possessing drug paraphernalia. Mr. Mendez filed a notice of appeal and the court entered the written findings of fact and conclusions of law required by JuCR 7.11(d). Mr. Mendez specifically assigns error to nine of the findings and conclusions, but his major contention is simply that all evidence should have been suppressed because he was seized illegally. He also contends that there was not a valid waiver of his right to remain silent.

## ANALYSIS

■■ Standard of Review. This court gives deference to the trial court's factual findings as long as they are supported by substantial evidence. The court reviews de novo the trial court's ultimate determinations that the police could constitutionally detain Mr. Mendez at the scene of the traffic stop, had probable cause to arrest him for obstructing a law enforcement officer when he left the scene, and did not obtain his confession by violating his

*Miranda* rights. *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *State v. Thorn*, 129 Wn.2d 347, 350-51, 917 P.2d 108 (1996); *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994); *State v. Benn*, 120 Wn.2d 631, 657, 845 P.2d 289 (1993).

Detention. Our analysis begins with *Terry v. Ohio*, 392 U.S. 1, 25-26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). As applied to a traffic stop, *Terry* holds that if a police officer conducting a traffic stop has an articulable suspicion of possible danger, the officer may order passengers either to stay in or get out of the vehicle as a method of ensuring officer safety. *Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997).

In this case, the officers did express some concern about their safety. Initially, they were alarmed by the fact that both the driver and a passenger immediately exited the car after the traffic stop. Moreover, the passenger walked away from the stopped car and ignored the officers' commands to return to the vehicle. As he continued to walk away, he fumbled with the front of his shirt. This conduct not only troubled the officers but was inconsistent with the procedures of the Yakima Police Department for traffic stops, which required police officers to keep passengers inside the vehicle during routine traffic stops as a method for minimizing interference with the officer, particularly in the event of the issuance of a citation, and ensuring officer safety.

The officers also expressed a concern about the occupants of the stopped car based upon their appearance and clothing. They believed they might be dealing with members of a "gang" and even possibly armed gang members. When pressed for additional facts upon which the suspicions were based, the officers were unable to provide them. These suspicions do not satisfy the requirements of *Terry v. Ohio* and do not provide a legal basis for detaining the passenger.

██ This means that the justification for the detention of the passenger rests solely upon the police policy of

requiring passengers to stay in the vehicle during routine traffic stops. One of the virtues of this policy is that it applies equally to all members of the driving public. Moreover, on its face, it was not unreasonable for a police officer to require passengers to remain in the vehicle during a routine traffic stop for the mutual safety of the passengers and the officer. The question is whether the undoubted benefits of the policy are worth its costs in terms of our personal liberty.

*Terry* holds that the touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry*, 392 U.S. at 19. What is reasonable depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975).

To a large extent, the weighing required for this balancing was performed for us in *Maryland v. Wilson*. In *Wilson*, the Court decided the police could reasonably require all passengers to exit after a routine traffic stop as a matter of departmental policy for officer's safety. In a prior case, *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977), the Court held that the police may order the driver out of the car during a routine traffic stop and *Wilson* extended this so-called bright-line rule to passengers. After citing the statistics for officer assaults and homicides that occurred during traffic pursuits and stops, the Court stated:

> [A]s a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car.

*Wilson*, 117 S. Ct. at 886. Consequently, the Court concluded "[w]hile there is not the same basis for ordering

the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal." *Wilson*, 117 S. Ct. at 886.

Mr. Mendez argues that *Wilson* does not apply to his case because the Supreme Court expressly declined Maryland's invitation to "hold that an officer may forcibly detain a passenger for the entire duration of the stop." *Wilson*, 117 S. Ct. at 886 n.3. Additionally, he notes that the Supreme Court expressly accepted the police rationale for ordering passengers out of the car which was to deny them access to any possible weapons concealed in the car. Mr. Mendez states he was walking away from the car and posed no real danger to the police. The distinctions Mr. Mendez draws with *Wilson* are valid. In fact, there is no evidence in this record that he posed any real danger to the police. Moreover, empowering police to order passengers to remain in a vehicle stopped for a traffic offense may be a greater intrusion upon our personal liberty than authorizing police to order passengers out of the vehicle. However, as noted in *Wilson*, passengers at routine traffic stops present some danger to the police. This danger increases when the police cannot exercise reasonable control over their location by requiring them either to remain in the car or to exit the car. We conclude the benefit of increased police protection outweighs the intrusion to passengers. We hold the police lawfully ordered Mr. Mendez to remain in the car.

■ Arrest. Mr. Mendez was charged with obstructing a public servant.[2] Mr. Mendez contends a person does not commit the crime of obstructing a police officer by leaving the officer's presence without permission unless the officer has grounds to detain him. He cites *State v. Little*, 116

---

[2]Effective July 1, 1995, RCW 9A.76.020(1) provides: "A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." The statute formerly provided: "Every person who, . . . (3) shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor." Mr. Mendez does not challenge his conviction on the basis the prosecutor used the old statute, or that the State failed to show he acted willfully instead of knowingly.

Wn.2d 488, 495, 806 P.2d 749 (1991) and *State v. Larson*, 93 Wn.2d 638, 642, 611 P.2d 771 (1980). Because we have determined that the police command to get back in the car was reasonable and lawful, Mr. Mendez's conduct hindered, delayed, and obstructed the police officers in their investigation of the traffic offense. His flight gave them reasonable cause for the arrest. *State v. Hudson*, 56 Wn. App. 490, 496-98, 784 P.2d 533, *review denied*, 114 Wn.2d 1016 (1990).

Statement. Emphasizing the State's heavy burden of proving an accused who is in custody waived his constitutional rights and consented to interrogation, Mr. Mendez contends the State failed to meet this burden because Officer Hartman testified it was possible that Mr. Mendez said he did not want to answer any questions after he had been read his rights, though the officer did not remember that to be the case.

Officer Hartman testified he read Mr. Mendez his rights from a *Miranda* card for juveniles. He further testified that Mr. Mendez had no questions, said he understood, and agreed to waive his rights. During cross-examination, Officer Hartman equivocated when asked whether he could remember whether Mr. Mendez said he did not want to answer any questions after he had been read his rights.

■ ■ Though custodial interrogation must cease if the person being questioned indicates that he wishes to remain silent, the right to remain silent may be waived. This waiver may be inferred from the facts and circumstances. *State v. Wheeler*, 108 Wn.2d 230, 237-38, 737 P.2d 1005 (1987). The State must prove by a preponderance of the evidence that the waiver was knowing, voluntary, and an intelligent relinquishment of a known right. *Wheeler*, 108 Wn.2d at 237-38. On substantial evidence, the commissioner found that Officer Hartman advised Mr. Mendez of his *Miranda* warnings, including the special juvenile warning, and that Mr. Mendez said he understood his rights and did not want a lawyer. He further found that no threats or promises were made to Mr. Mendez. There

was no evidence before the trial court that Mr. Mendez did, in fact, say he did not want to answer questions. The court properly admitted and considered his statement that the pipe was his and that he used it to smoke marijuana.

The judgment of the trial court is affirmed.

BROWN, J., concurs.

SCHULTHEIS, A.C.J. (dissenting) — I cannot endorse the adoption of a bright-line rule that permits police, as a matter of departmental policy, to seize vehicle passengers without constitutional justification. Therefore, I respectfully dissent.

The Fourth Amendment, applicable to the States through the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 84 A.L.R.2d 933 (1961), provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." One of the most fundamental rights protected by this Amendment is the ability to move or travel as one pleases without fear of being stopped or detained unless the police have adequate constitutional justification for doing so. *Shapiro v. Thompson*, 394 U.S. 618, 629-30, 89 S. Ct. 1322, 1328-29, 22 L. Ed. 2d 600 (1969), *overruled in part on other grounds in Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); *Brinegar v. United States*, 338 U.S. 160, 177, 69 S. Ct. 1302, 1311, 93 L. Ed. 1879 (1949). Indeed, "freedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful . . . ." *Aptheker v. Secretary of State*, 378 U.S. 500, 520, 84 S. Ct. 1659, 1671, 12 L. Ed. 2d 992 (1964) (Douglas, J., concurring).

Absent probable cause to make an arrest, law enforcement officials may briefly detain a person as part of an investigatory stop if they have a reasonable articulable

suspicion based on objective facts that the person has engaged in criminal activity. *Dunaway v. New York*, 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979); *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968). The police could constitutionally seize the driver in this case based on their reasonable suspicion that he had committed a traffic infraction. The scope of the stop is limited to issuance of a citation, but for their own safety police may order the driver and any passengers to get out of the vehicle pending completion of the stop, thus denying them access to weapons potentially concealed within. *Pennsylvania v. Mimms*, 434 U.S. 106, 109-10, 98 S. Ct. 330, 332-33, 54 L. Ed. 2d 331 (1977); *Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882, 886, 137 L. Ed. 2d 41 (1997). Balanced against the legitimate and weighty public interest in police safety, the intrusion on passengers' liberty is deemed minor because the only change resulting from the police order is that they will be waiting outside of, rather than inside of, the stopped car while the officer issues the citation. *Wilson*, 117 S. Ct. at 885-86.

It is important to remember, however, that the detention of the passenger is merely an unavoidable consequence of the usual traffic stop. It results from the fact that the passenger has chosen to travel with the driver and the passenger must wait until they can proceed on their way. It is under these circumstances that ordering the passenger to wait outside the car instead of inside can be deemed a reasonable minor intrusion. But constitutional rights are individual, and if a passenger chooses to leave the scene of a traffic stop of the driver with whom he is traveling and proceed on his way independently, police cannot interfere without adequate constitutional justification.

The seizure at issue in this case is not the stopping of the driver, but rather the actual physical restraint imposed on a passenger. Whether the police could lawfully seize Efrain Mendez and arrest him for obstruction depends upon their authority to interfere with his individ-

ual right to move about freely and to simply walk away from the police encounter. The police had no grounds for their seizure of Mr. Mendez. They clearly did not have probable cause to arrest him and, as the majority concedes, they also did not have a reasonable articulable suspicion that he was engaged in criminal activity when they ordered him to get back into the car. Neither logic nor any reasonable interpretation of *Wilson* supports the majority's conclusion that the police could nevertheless constitutionally order Mr. Mendez to stay at the scene of the traffic stop, in the car, for officer safety.

On facts remarkably similar to these, Maryland's highest court considered (and after remand by the United States Supreme Court, reconsidered) whether a passenger in a vehicle stopped for a traffic violation may be convicted of disorderly conduct and battery when, rather than heeding the police command to remain in the vehicle, he walks away from the scene, and subsequently resists police attempts at detention. *Dennis v. State*, 342 Md. 196, 674 A.2d 928, *vacated*, ____ U.S. ____, 117 S. Ct. 40, 136 L. Ed. 2d 4 (1996); *Dennis v. State*, 345 Md. 649, 693 A.2d 1150, *cert. denied*, ____ U.S. ____, 118 S. Ct. 329 (1997). The court held the officer could not legally detain the passenger simply for the general purpose of officer safety; as in any other case, detention required at least an articulated reasonable suspicion that the passenger was engaged in activity justifying a *Terry* stop. *Dennis*, 693 A.2d at 1150, 1152. That is the proper holding in this case as well. That police would prefer to exercise unquestioned control in every situation is an insufficient justification for abandoning individualized suspicion. "The needs of law enforcement stand in constant tension with the Constitution's protections of the individual against certain exercises of official power. It is precisely the predictability of these pressures that counsels a resolute loyalty to constitutional safeguards." *Almeida-Sanchez v. United States*, 413 U.S. 266, 273, 93 S. Ct. 2535, 2540, 37 L. Ed. 2d 596 (1973).

The crime of obstructing a law enforcement officer

requires that the officer be discharging his or her official powers or duties. RCW 9A.76.020(1). A police officer is not discharging his official powers or duties when he seizes an individual illegally. *Holt v. State*, 227 Ga. App. 46, 487 S.E.2d 629 (1997); *see City of Seattle v. Lewis*, 70 Wn. App. 715, 855 P.2d 327 (1993), *review denied*, 123 Wn.2d 1011 (1994). Because the officers had no grounds for detaining Mr. Mendez, his flight did not give them probable cause for the arrest. *See State v. Hudson*, 56 Wn. App. 490, 496-98, 784 P.2d 533, *review denied*, 114 Wn.2d 1016 (1990); *see also State v. Little*, 116 Wn.2d 488, 506, 806 P.2d 749 (1991) (Utter, J., dissenting). The evidence should have been suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

I would reverse the judgment of the trial court.

Review granted at 135 Wn.2d 1016 (1998).