STATE OF NORTH CAROLINA v. MARK DUANE FLETCHER

No. 138

(Filed 6 January 1981)

**Homicide § 21.7— second degree murder — sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of second degree murder where it tended to show that the victim entered a car occupied by defendant and defendant's companion in order to sell defendant a stolen M-16 rifle; the victim was seated in the front seat and defendant was seated in the back seat; defendant told the victim he had to pick up the money for the rifle at a friend's house; as the car was being driven by defendant's companion, defendant shot the victim in the head with a pistol which belonged to the girlfriend of defendant's companion; defendant threatened to shoot his companion unless he followed defendant's orders, whereupon the companion assisted defendant in burying the body; and a search of the residence of defendant and his companion uncovered the M-16 rifle.

DEFENDANT appeals from judgment of *Stevens, J.*, entered at the 21 May 1980 Criminal Session of Superior Court, ONSLOW County.

Defendant was charged in a bill of indictment, proper in form,

with the murder of Ronald Ray Jenkins on 25 May 1979. For reasons undisclosed in the record, the district attorney announced prior to trial that defendant would be tried for second degree murder only. The jury returned a verdict of guilty, and from the trial court's judgment sentencing him to life imprisonment, defendant appeals.

State's witness Benjamin M. Duvall testified at trial as follows: On and prior to 25 May 1979, both he and defendant were members of the United States Marine Corps and were stationed at Camp LeJeune in Onslow County. At the time of the murder, Duvall was living in Newport, North Carolina with his girlfriend, B.J. Rohweller, and defendant. Before 9:00 p.m. on 25 May 1979, defendant telephoned Duvall at their home in Newport and requested that Duvall meet him at Camp LeJeune. When Duvall arrived at the base, defendant instructed him to drive to another barracks area. Defendant met Duvall at the designated area, threw a green awol bag into the back seat of the green Chevrolet Vega Duvall was driving, and rode with Duvall to the end of the street. A man walked to the driver's side of the car and asked defendant if he "had the money." Defendant replied that he had to pick the money up at a friend's house off the base, whereupon the man walked away, returned with a green vinyl bag, and got into the front passenger seat of the Vega. Defendant was seated on the right side of the back seat. The man was introduced to Duvall as Ronald Ray Jenkins. As the three men drove off, Jenkins produced an M-16 rifle, disassembled into three parts, which defendant inspected and Jenkins then replaced in the green vinyl bag. Defendant instructed Duvall to drive up Rocky Run Road in Onslow County. After driving upon this road for a short distance, Duvall heard a gunshot close to his right ear. He looked over and saw Jenkins slumped against the front passenger door of the vehicle and observed defendant in the back seat, grinning and holding a pistol. Duvall recognized the pistol as the one belonging to his girlfriend, and identified it at trial as such. Defendant then threatened to shoot Duvall unless he followed defendant's orders, whereupon Duvall assisted defendant in burying the body beside a small road leading off Rocky Run Road. Duvall testified that because of defendant's repeated threats, neither he nor his girlfriend reported the incident to law enforcement officers.

Mark Taylor testified for the State that at approximately 9:30 p.m. on 25 May 1979 he accompanied his roommate Ronald Ray Jenkins to a spot in the woods near their barracks, where the two

recovered a buried M-16 rifle which Jenkins had previously stolen. Jenkins told Taylor that he had arranged to meet defendant Fletcher at 10:00 p.m. that night to transact a sale of the weapon. Taylor stated that he went with Jenkins to the designated meeting place and saw a green Vega automobile drive up and park. Jenkins approached the vehicle, talked for a moment with the vehicle's occupants, and returned to Taylor, relating to him that defendant was in the vehicle and that they were going to proceed with the sale. Jenkins then returned to the Vega and rode away. Taylor never saw him again.

Further evidence presented by the State tended to show that on 3 June 1979 State's witness Johnny Midgett was jogging on a dirt road near Rocky Run Road when he saw a man's arm protruding from the ground beside the road. Law enforcement officers were summoned and the body was identified as that of Ronald Ray Jenkins. The cause of death was a gunshot wound to the head.

B. J. Rohweller, witness Duvall's girlfriend, testified for the State that she was unaware of the incident until the discovery of Jenkins' body was aired over the television and Duvall became sick after watching the broadcast. Duvall then confessed the murder to her. After defendant's repeated threats to kill or assault her, Ms. Rohweller reported the information she had pertaining to the murder to law enforcement authorities on 31 July 1979. Defendant and Duvall were arrested on 1 August 1979, and a search of their residence in Onslow County on the same day uncovered an M-16 rifle, among other items.

Defendant testified in his own behalf, denying that he committed the murder and stating that he did not know Ronald Ray Jenkins. He claimed that the M-16 rifle belonged to Duvall. Defendant further presented evidence tending to establish his good character and reputation as a nonviolent person, and tending to show that Duvall was an interested witness, since he was testifying under an agreement with the State for a reduction of the charges against him in exchange for his testimony.

*Richard S. James for defendant*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Alfred N. Salley for the State.*

COPELAND, Justice.

By his sole assignment of error, defendant contends that the trial court erred in refusing to grant defendant's motion to dismiss on the grounds that the evidence was insufficient to sustain the conviction and in failing to set aside the verdict as being against the greater weight of the evidence. We have carefully reviewed defendant's assignment of error and find it without merit.

In ruling upon defendant's motion to dismiss, the trial court is required to interpret the evidence in the light most favorable to the State, and all reasonable inferences favorable to the State must be drawn therefrom. *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). As stated by Justice Ervin in *State v. Bowman*, 232 N.C. 374, 376, 61 S.E. 2d 107, 109 (1950),

"[i]n ruling on such motion, the Court does not pass upon the credibility of the witnesses for the prosecution, or take into account any evidence contradicting them offered by the defense. The court merely considers the testimony favorable to the State, assumes it to be true, and determines its legal sufficiency to sustain the allegations of the indictment. Whether the testimony is true or false, and what it proves if it be true are matters for the jury."

Upon defendant's motion to dismiss for insufficiency of the evidence, the trial court must determine as a question of law whether the State has offered substantial evidence against defendant of every essential element of the crime charged. "Substantial evidence" is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980); *State v. Powell, supra*. After considering the evidence in this case in the light most favorable to the State, we find that there was substantial evidence presented of defendant's guilt on each material element of second degree murder; i.e., the unlawful killing of a human being with malice. *State v. Rogers*, 299 N.C. 103, 261 S.E. 2d 1 (1979); *State v. Cates*, 293 N.C. 462, 238 S.E. 2d 465 (1977). The determination of defendant's guilt or innocence was therefore a question to be answered by the jury, and trial court did not err in denying defendant's motion to dismiss for insufficiency of the evidence.

A motion to set aside the verdict as being against the greater weight of the evidence is addressed to the discretion of the trial court, and is not reviewable on appeal absent an abuse of that

discretion. *State v. Hamm*, 299 N.C. 519, 263 S.E. 2d 556 (1980); *State v. Pearce*, 296 N.C. 281, 250 S.E. 2d 640 (1979). We find no abuse of discretion by the trial judge in this case, therefore defendant's motion was properly denied.

After careful examination of the entire record before us on appeal, we hold that defendant received a fair trial free from prejudicial error.

No error.