STATE OF NORTH CAROLINA v. ROY PURNELL SHEARIN

No. COA04-394

(Filed 17 May 2005)

**1. Search and Seizure— car stop—frisk—protection of officer—totality of circumstances**

Under the totality of the circumstances, it is reasonable for a police officer at a traffic stop to suspect that a person is armed and dangerous when that person appears agitated, is reluctant to

answer when asked if he is armed, refuses to be searched, and flees rather than submit to a search. The officer's search of defendant in this case was a reasonable means of protecting himself, and defendant's motion to suppress the resulting evidence was correctly denied.

**2. Search and Seizure— detention at traffic stop—protection of officer**

It was reasonable for an officer to require a passenger to remain in a vehicle during a lawful traffic stop where the totality of the evidence demonstrated that the officer was taking precautions for his own safety. The trial court correctly denied defendant's motion to dismiss evidence subsequently discovered.

**3. Arrest— instructions—variance from indictment—resisting arrest and resisting search—no plain error**

An instruction on resisting arrest was not plain error where the indictment was for resisting an officer attempting a search. While defendant objected to the instruction at trial, he did not present to the trial judge his argument that the instruction was inconsistent with the indictment, and he did not specifically allege plain error in his assignments of error. Moreover, the difference between the instruction and the indictment would not have changed the verdict.

**4. Drugs— instructions—variance from indictment—purpose of drug paraphernalia—same underlying theory of guilt**

The theories of guilt underlying an indictment for possession of drug paraphernalia for "packaging" controlled substances and an instruction for possession of drug paraphernalia for possession of controlled substances are the same, and there was no plain error in the instruction.

**5. Arrest— resisting—motion to dismiss—evidence sufficient**

The evidence of resisting an officer was sufficient to survive defendant's motion to dismiss, even though defendant argued that the officer acted unlawfully, where the officer observed defendant passenger during a traffic stop, told him to remain within his vehicle, and asked to search him when defendant answered a question about weapons reluctantly, and defendant ran from the officer. The State is entitled to every reasonable inference on a motion to dismiss, and the facts in this case support the inference that the officer was acting within his

official duties. It was also concluded elsewhere in this opinion that the officer's detention and search of defendant did not violate the Fourth Amendment.

### 6. Sentencing— marijuana possession—erroneous class— consolidated with other offenses

A marijuana possession charge was remanded for resentencing where defendant was sentenced for Class 1 possession even though the evidence supported only Class 3 possession. Although the State argued that remand was unnecessary because the charge had been consolidated with others for sentencing and the result was consistent with the Structured Sentencing Act, the Court of Appeals was not convinced that the sentencing was not affected by the treatment of the marijuana possession charge.

Judge WYNN concurring.

Appeal by defendant from judgments entered 14 November 2003 by Judge W. Russell Duke, Jr. in Superior Court, Halifax County. Heard in the Court of Appeals 7 December 2004.

*Attorney General Roy A. Cooper, by Special Deputy Attorney General Gerald K. Robbins, for the State.*

*Russell J. Hollers, III for defendant.*

McGEE, Judge.

Roy P. Shearin (defendant) was convicted of possession of marijuana, possession of cocaine, possession of drug paraphernalia, and resisting, obstructing, and delaying a public officer. He was sentenced to ten to twelve months in prison plus 180 days. Defendant assigns as error the trial court's denial of defendant's motion to suppress, jury instructions on resisting arrest and possession of drug paraphernalia, denial of defendant's motion to dismiss, and entry of judgment as a Class 1 misdemeanor possession of marijuana. We find no error at trial but remand for imposition of judgment and sentencing as a Class 3 misdemeanor possession of marijuana.

Defendant was a passenger in a vehicle that was stopped by a sheriff's deputy on 3 September 2002 at approximately 10:45 p.m. because the license plate light was not working. The deputy smelled alcohol on the driver and began administering sobriety tests. Roanoke Rapids Police Officer Norton was patrolling in the area, saw the deputy's emergency lights, and drove up to assist the deputy. The

STATE v. SHEARIN

[170 N.C. App. 222 (2005)]

vehicle was stopped in an area that was lit only by a single street light. Standing about twenty-five feet away from the stopped vehicle, Officer Norton used a flashlight to observe defendant, who remained in the passenger seat of the vehicle. Defendant asked Officer Norton if he could leave. Officer Norton told defendant to stay in the vehicle for a few more minutes. Defendant again asked Officer Norton whether he could leave, and Officer Norton approached the vehicle. Officer Norton testified that defendant "was very agitated and appeared intoxicated at the time." Officer Norton smelled alcohol on defendant and saw a black plastic bag at defendant's feet, with what Officer Norton believed to be a beer bottle, sticking out of the bag. Officer Norton asked defendant what was in the bag, and defendant tried to push the bag under the seat with his foot.

Officer Norton asked defendant to exit the vehicle. He then asked defendant if he had any weapons. Defendant did not respond. Officer Norton asked defendant three more times if defendant had any weapons. Defendant finally responded that he did not. Officer Norton testified that defendant was originally calm when first asked to exit the vehicle, but again became agitated and boisterous after being asked if he had any weapons. Defendant asked why he was being held. Officer Norton told defendant to move his hands away from his pockets so Officer Norton could frisk defendant. Defendant refused, and "took off running."

Officer Norton chased defendant into an enclosed parking lot. He told defendant to come out of hiding. Defendant complied and the officer ordered defendant onto the ground. Officer Norton hand-cuffed and patted down defendant. Officer Norton found marijuana, cocaine, scales for measuring drugs, and a pocket knife on defendant.

The State's evidence showed that defendant appeared agitated from the beginning of the stop. Defendant, however, asserts that he was fully compliant with the police and was not "agitated" until defendant realized that he was not free to leave.

I.

[1] Defendant first assigns as error the trial court's denial of defendant's motion to suppress. Defendant asserts that his Fourth Amendment right to be free from unreasonable searches and seizures was violated. Defendant argues that the items found on his person, namely marijuana, cocaine, and drug paraphernalia, should have been suppressed as they were "fruits of the poisonous tree."

STATE v. SHEARIN

[170 N.C. App. 222 (2005)]

The fundamental inquiry under the Fourth Amendment is whether the governmental intrusion into a private individual's liberty and property was reasonable. *See Terry v. Ohio*, 392 U.S. 1, 19, 20 L. Ed. 2d 889, 904 (1968). It is well-established that a law enforcement officer may temporarily detain a person for investigative purposes without violating the Fourth Amendment. *Id.* at 22, 20 L. Ed. 2d at 906-07. To make such a stop, an officer must have a reasonable suspicion of criminal activity based on articulable facts. *Id.* at 21, 20 L. Ed. 2d at 906. Similarly, an officer may frisk a person where the officer reasonably suspects that "criminal activity may be afoot and that the [person] with whom he is dealing may be armed and presently dangerous[.]" *Id.* at 30, 20 L. Ed. 2d at 911. The scope of this search is protective in nature and is limited to the person's outer clothing and to the search for weapons that may be used against the officer. *Id.* "Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." *Terry*, 392 U.S. at 31, 20 L. Ed. 2d at 911. Evidence of contraband, plainly felt during a pat-down or frisk, may also be admissible, provided the officer had probable cause to believe that the item was in fact contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375-77, 124 L. Ed. 2d 334, 346-47 (1993). When determining whether an officer had "a reasonable suspicion to make an investigatory stop" or had reason to believe that a defendant was armed and dangerous, trial courts must consider the totality of the circumstances. *State v. Willis*, 125 N.C. App. 537, 541, 481 S.E.2d 407, 410 (1997).

Defendant argues that he was subjected to a stop and a frisk that exceeded the scope of what is permissible under *Terry*. Specifically, defendant argues that he was illegally detained because he repeatedly asked if he could leave and was told to remain where he was. Defendant also argues that he was illegally searched because Officer Norton did not have a reasonable articulable suspicion that defendant was armed and dangerous. Defendant argues that while evidence suggested that defendant was being obnoxious to Officer Norton, there was no evidence that defendant was threatening Officer Norton, or otherwise indicating that he would be violent. Defendant also points to Officer Norton's testimony acknowledging that defendant was "calm when he exited the vehicle" and that Officer Norton had not observed any weapon or "any type of bulge" that might indicate that defendant had a weapon. Defendant further contends that he had told Officer Norton that he did not want to be searched and that he only ran away "[w]hen it became obvious that [Officer Norton] was going

STATE v. SHEARIN

[170 N.C. App. 222 (2005)]

to go through with the illegal frisk[.]" Thus, defendant asserts that because he was illegally detained and illegally searched, the trial court erred in not granting his motion to suppress the items found on his person as a result of the search and seizure. We disagree.

"Our review of a motion to suppress is limited to a determination of whether the trial court's findings of fact are supported by competent evidence, and whether those findings are in turn supported by legally correct conclusions of law." *Willis*, 125 N.C. App. at 540, 481 S.E.2d at 410. In the present case, the trial court found the following:

8. That the defendant became agitated when Officer Norton told him that he needed to remain in the car until Deputy Rooks completed his investigation.

9. That Officer Norton observed a strong odor of alcohol coming from the defendant who appeared to be intoxicated.

10. That while speaking with the [d]efendant Officer Norton noticed a beer bottle neck sticking out of a black plastic bag in the floorboard of the vehicle.

11. That when Officer Norton questioned the defendant about the bag and its contents the defendant attempted to push the bag under the seat with his feet not responding to the officer's questions.

12. That Officer Norton asked the [d]efendant to exit the vehicle so that he could secure said bag [and] its contents as evidence.

13. That upon defendant exiting the vehicle Officer Norton had to ask the defendant three or four times if he had any weapons on him before he answered no.

14. That the defendant was standing with his hands at his pockets and would not move his hands away from his pockets despite officer's repeated requests.

15. That during this time the defendant became increasingly agitated.

16. That up to this point Officer Norton had not touched the defendant.

17. That upon Officer Norton telling the defendant he wanted to pat his pockets for weapons in order to assure both his

and Deputy Rooks' safety the defendant refused and ran from Officer Norton.

Despite defendant's contentions to the contrary, the State's evidence competently supports these findings of fact which in turn support the trial court's conclusions of law:

1. That looking at the totality of the circumstances surrounding the search of the defendant Officer Norton had reasonable grounds to believe that criminal activity might be afoot, justifying his temporary detention of the defendant.

2. That during and after Officer Norton's detention of the defendant his personal observations confirmed his apprehension that criminal activity might be afoot and indicated that the defendant might have been armed.

3. That Officer Norton was entitled to frisk defendant as a matter of self-protection.

4. That the defendant was searched only after he had run from Officer Norton who had informed the defendant that he was not free to leave.

In looking at the totality of the circumstances, it is reasonable for a police officer to suspect that someone is armed and dangerous when that person appears agitated, is reluctant to answer when asked whether he is armed, and not only refuses to be searched for weapons, but also flees when he is about to be searched. Officer Norton's search of defendant was thus reasonable as a means of protecting himself from being assaulted by defendant.

[2] Similarly, Officer Norton's detention of defendant at the scene was not unreasonable under the circumstances, and thus did not violate defendant's Fourth Amendment rights. Defendant concedes that Officer Norton's suspicions might have been raised after the detention continued, but argues that the initial detention, when Officer Norton told defendant to "stay seated for a few minutes" after defendant asked if he could leave the scene, was unlawful. Defendant argues that at the time Officer Norton told defendant to remain in the car, Officer Norton "did not have any suspicion that [defendant] had committed a crime[.]" However, as defendant points out, the United States Supreme Court has held that a police officer may order a passenger to exit a vehicle, as a safety precaution, without any suspicion that the individual has committed a crime. *Maryland v. Wilson*, 519 U.S.

STATE v. SHEARIN

[170 N.C. App. 222 (2005)]

408, 412-15, 137 L. Ed. 2d 41, 46-48 (1997). The same rationale may be applied when an officer orders an individual to remain in a vehicle.

Inherent to assessing the reasonableness of a seizure is the need to balance public safety and the safety of the officer with the individual's right to be free from arbitrary governmental interference. *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 54 L. Ed. 2d 331, 336 (1977). The United States Supreme Court has held that public safety and the safety of an officer justify directing a driver or passenger to exit the vehicle during a traffic stop, and that the intrusion to an individual's liberty in such circumstances is minimal. *See id.* at 110-11, 54 L. Ed. 2d at 336-37 (holding that asking the driver to step outside of the vehicle is a *de minimis* intrusion to the driver's liberty, which is outweighed by the concern for officer safety); *Wilson*, 519 U.S. at 413-15, 137 L. Ed. 2d at 47-48 (extending the holding in *Mimms* to passengers as well as drivers). The facts of the case before us differ from *Mimms* and *Wilson* in that defendant was asked to remain in the vehicle, rather than exit the vehicle. Though neither the United States Supreme Court nor our Courts have specifically addressed whether commanding a passenger to remain in the vehicle during a traffic stop unreasonably intrudes on an individual's personal liberty, other courts have considered this issue and two lines of cases have developed. *See People v. Forbes*, 728 N.Y.S.2d 64, 66 (N.Y. App. Div. 2 Dept. 2001).

The first line of cases holds that requiring a passenger to remain in the vehicle for the duration of a legal automobile stop is a *de minimis* intrusion on that individual's personal liberty. *See id.; People v. Gonzalez*, 704 N.E.2d 375, 382-83 (Ill. 1998) (stating that "it is reasonable for a police officer to immediately instruct a passenger to remain at the car, when that passenger, of his own volition, exits the lawfully stopped vehicle at the outset of the stop"), *cert. denied*, 528 U.S. 825, 145 L. Ed. 2d 63 (1999); *State v. Webster*, 824 P.2d 768, 770 (Ariz. App. 1991) (holding that for safety purposes, a passenger may be ordered back into the vehicle during a lawful traffic stop); *see also Rogala v. District of Columbia*, 161 F.3d 44, 53 (D.C. Cir. 1998) (concluding "that it was reasonable for [the officer] to order [the defendant] to stay in the car in order to maintain control of the situation and that [the officer] therefore did not violate [the defendant's] Fourth Amendment rights"); *United States v. Moorefield*, 111 F.3d 10, 13 (3rd Cir. 1997) (holding that it is constitutional for police officers to order a vehicle's occupants to remain in the vehicle with their hands in the air during a traffic stop).

Another line of cases holds that the Fourth Amendment is violated when a police officer detains a passenger in a vehicle during a traffic stop, unless the officer has an independent articulable suspicion that the passenger is dangerous or involved in criminal activity. *State v. Mendez*, 970 P.2d 722, 728 (Wash. 1999) (holding that under the Washington Constitution, which affords greater privacy rights than the Fourth Amendment of the U.S. Constitution, a police officer must "articulate an objective rationale predicated specifically on safety concerns . . . for ordering a passenger to stay in the vehicle or to exit the vehicle"); *Wilson v. State*, 734 So.2d 1107, 1113 (Fla. App. 4 Dist. 1999), *cert. denied*, 529 U.S. 1124, 146 L. Ed. 2d 820 (2000) (holding that an officer "should be able to identify objective circumstances" to support ordering a passenger to return to or remain in a vehicle during a traffic stop).

We recognize that, for reasons of public safety and personal safety of an officer, a police officer needs to be able to keep reasonable control over a situation. As the United States Supreme Court acknowledged in both *Mimms* and *Wilson*, the potential for danger to an officer during a traffic stop is high. *Mimms*, 434 U.S. at 109, 54 L. Ed. 2d at 336-37 (citing a study as indicating that "approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile"); *Wilson*, 519 U.S. at 413, 137 L. Ed. 2d at 47 (citing a crime report from the Federal Bureau of Investigation as saying that "[i]n 1994 alone, there were 5,762 officer assaults and 11 officers killed during traffic pursuits and stops").

In addition to this inherent risk of danger during a traffic stop, the totality of the evidence in the present case was sufficient to demonstrate that Officer Norton was taking precautions for his own safety. The stop occurred at 10:45 p.m. in a poorly lit area. The officer making the stop asked Officer Norton to remain at the scene and to assist the officer by watching defendant while the officer administered sobriety tests to the driver. Officer Norton stood twenty-five feet away from the vehicle where defendant was a passenger. Defendant appeared generally agitated to Officer Norton from the beginning. Under these circumstances, it is reasonable for an officer to decide that it is safer to have an occupant of a vehicle remain temporarily in the vehicle for the short duration of a lawful traffic stop. To the extent that the first line of cases discussed above holds that such a detention is a minimal intrusion on an individual's rights and does not violate the Fourth Amendment, we agree.

STATE v. SHEARIN

[170 N.C. App. 222 (2005)]

We thereby affirm the trial court's denial of defendant's motion to suppress because competent evidence showed that the search and temporary detention of defendant were consistent with a *Terry* stop and frisk, and were reasonable under the circumstances. *See Terry*, 392 U.S. 1, 20 L. Ed. 2d 889.

II.

[3] Defendant next argues that the trial court erred in instructing the jury on resisting *arrest* when the theory alleged in the indictment was resisting while the police officer was "attempting to search . . . defendant for officer safety after a car stop." As defendant asserts, "where the indictment for a crime alleges a theory of the crime, the State is held to proof of that theory and the jury is only allowed to convict on that theory." *State v. Taylor*, 304 N.C. 249, 275, 283 S.E.2d 761, 778 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983). The grand jury returned an indictment against defendant on 31 March 2003, stating that defendant "unlawfully and willfully did resist, delay and obstruct [a public officer], by running from the officer. At the time, the officer was discharging and attempting to discharge a duty of his office, attempting to search . . . defendant for officer safety after a car stop." The trial court instructed the jury on the elements of resisting an officer and included as one of the elements "that the [public officer] was attempting to make a lawful arrest." Defendant asserts that this instruction was in error because it did not comport with the evidence or the indictment.

Defendant further asserts that he objected to this instruction at trial and that the issue is properly preserved. Defense counsel did object but stated only: "in regard to the resisting arrest charge and [the trial court's] description of this being a lawful arrest, that pursuing a person after he was running was a lawful arrest. We would make an objection to that." Defendant did not present to the trial court his argument that the instruction was inconsistent with the theories in the indictment. To preserve an issue regarding jury instruction for appeal, a defendant must not only object to the instruction "before the jury retires to consider its verdict," but must also state "distinctly that to which he objects and the grounds of his objection[.]" N.C.R. App. P. 10(b)(2). Defendant failed to distinctly state the grounds for his objection that he now argues on appeal. Though an issue not properly preserved at trial may be reviewed as plain error, N.C.R. App. P. 10(c)(4), defendant did not specifically allege plain error in his assignments of error and therefore waives his right to plain error review. *See State v. Matthews*, 166 N.C. App. 281, ——, —— S.E.2d ——,

—— (COA03-1354) (filed 7 September 2004) (quoting *State v. Moore*, 132 N.C. App. 197, 201, 511 S.E.2d 22, 25, *disc. review denied*, 350 N.C. 103, 525 S.E.2d 469 (1999)).

We note, however, that even if defendant had properly asserted plain error, there was no plain error in the challenged jury instruction. It is well established that:

> [t]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the . . . mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Cummings*, 352 N.C. 600, 616, 536 S.E.2d 36, 49 (2000) (citations omitted), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001). To prevail on a plain error claim, a "defendant must establish not only that the trial court committed error, but that 'absent the error, the jury probably would have reached a different result.' " *State v. Sierra*, 335 N.C. 753, 761 (1994), *cert. denied*, 544 S.E.2d 242 (2000) (quoting *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697, 440 S.E.2d 791, 796 (1993)). In reviewing the entire record, we fail to see how an instruction that included as an element that the officer was "attempting to search . . . defendant for officer safety after a car stop," rather than "attempting to make a lawful arrest" would change the jury's verdict.

### III.

[4] Defendant similarly asserts that the trial court erred in its jury instruction on possessing drug paraphernalia, because the jury instruction was inconsistent with the theory alleged in the indictment. Defendant failed to object at trial and therefore did not properly preserve this issue. Defendant assigned as plain error the trial court's instruction on possessing drug paraphernalia, but he failed to argue plain error in his brief. Pursuant to N.C.R. App. P. 28(b)(6), this assignment of error is deemed abandoned.

We note nonetheless that there is no plain error in this instruction to the jury. The indictment stated that defendant "unlawfully, willfully did knowingly possess with intent to use drug paraphernalia, SCALES FOR PACKAGING A CONTROLLED SUBSTANCE, which it would be unlawful to possess[.]" The trial court instructed the jury: "that the defendant did [knowingly possess drug paraphernalia] with the intent to use said drug paraphernalia in order to possess a controlled substance which would be unlawful to possess." The subsequent mandate charged the jury to return a guilty verdict if they found beyond a reasonable doubt that "defendant unlawfully and knowingly possessed with intent to use certain drug paraphernalia in order to unlawfully use marijuana or cocaine, both being controlled substances which would be unlawful to possess." The only substantial difference in the language of the indictment and the jury instruction is the description of the drug paraphernalia: "scales for packaging a controlled substance." The underlying theory being presented to the jury is the same theory that supported the indictment for possession of drug paraphernalia. Contrary to what defendant appears to argue, "packaging" as used in the indictment is not a different theory of guilt. Even if defendant had properly argued plain error, there was no plain error.

IV.

**[5]** Defendant further argues that the trial court erred in denying defendant's motion to dismiss the charge of resisting an officer. A defendant's motion to dismiss should be denied when "there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Fletcher*, 301 N.C. 709, 712, 272 S.E.2d 859, 861 (1981). In ruling on a defendant's motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference that can be drawn from the evidence. *Powell*, 299 N.C. at 99, 261 S.E.2d at 117. The elements of resisting an officer are that a person "willfully and unlawfully resist[ed], delay[ed] or obstruct[ed] a public officer in discharging or attempting to discharge a duty of his office." N.C. Gen. Stat. § 14-223 (2003).

In the present case, defendant asserts that the State did not present substantial evidence of these essential elements. Specifi-

cally, defendant contends that since Officer Norton's detention and attempted search of defendant were unlawful, Officer Norton was "not discharging a duty of his office when [defendant] ran away." We disagree. Even without concluding, as we did above, that Officer Norton's detention and search of defendant were reasonable under the circumstances and did not violate the Fourth Amendment, in considering the motion to dismiss, the State was entitled to every reasonable inference that could be drawn from the facts. Certainly, the facts of this case, when viewed in the light most favorable to the State, support the inference that Officer Norton was discharging official duties by observing defendant, telling defendant to remain in the vehicle, and asking to search defendant after defendant reluctantly answered that defendant did not have any weapons. This evidence was sufficiently substantial to survive defendant's motion to dismiss.

## V.

[6] Defendant argues that the trial court erred in entering judgment on the crime of Class 1 misdemeanor possession of marijuana. Defendant asserts, and the State concedes, that the evidence did not support this judgment. A Class 1 misdemeanor for possessing marijuana arises when an individual possesses more than one-half ounce but less than one and one-half ounces of marijuana. N.C. Gen. Stat. § 90-95(d)(4) (2003). Possession of less than one-half ounce of marijuana constitutes a Class 3 misdemeanor. *Id.* The evidence presented at trial only supported a judgment for a Class 3 misdemeanor, and the trial court erred in entering judgment for a Class 1 misdemeanor.

While the State agrees that the evidence only supported a Class 3 misdemeanor for the possession of marijuana conviction, the State argues it was a clerical error and that "remand for imposition of judgment is unnecessary." The State argues that the trial court did not err in imposing the sentence because it had consolidated for sentencing the convictions of possession of marijuana and possession of drug paraphernalia, and possession of drug paraphernalia is a Class 1 misdemeanor. *See* N.C. Gen. Stat. § 90-113.22 (2003). As the State asserts, under our Structured Sentencing Act,

> when separate offenses of different class levels are consolidated for judgment, the trial judge is required to enter judgment containing a sentence for the conviction at the highest class. Accordingly, the trial judge is limited to the statutory sentencing guidelines, set out at N.C.G.S. § 1340.17(c), for the class level of

the most serious offense, rather than any of the lesser offenses in that same consolidated judgment.

*State v. Tucker*, 357 N.C. 633, 637, 588 S.E.2d 853, 855 (2003). The State contends that since possession of drug paraphernalia is a Class 1 misdemeanor, when the trial court consolidated this conviction with the Class 3 misdemeanor possession of marijuana charge, the trial court had a duty to sentence defendant within the range established by our Structured Sentencing Act for a Class 1 misdemeanor. Defendant has a prior record level of III, for which, pursuant to N.C. Gen. Stat. § 15A-1340.23(c), the appropriate sentencing range is 1-120 days. The trial court sentenced defendant to 120 days, and thus the State contends that the trial court did not err because the sentence imposed was consistent with the Structured Sentencing Act. However, we are not convinced that the sentencing was unaffected by the trial court's treatment of defendant's possession of marijuana as a Class 1 misdemeanor, as opposed to a Class 3 misdemeanor. We remand for imposition of judgment and sentencing on the Class 3 misdemeanor conviction of possession of less than one-half ounce of marijuana.

No error at trial; vacated and remanded for imposition of judgment and sentencing.

Judge TYSON concurs.

Judges WYNN concurs in the result with a separate opinion.

WYNN, Judge concurring.

While I concur in the majority's result, I disagree with the majority opinion to the extent that it holds that commanding a passenger in a vehicle subject to a stop to remain in the vehicle is *per se* permissible. In my opinion, allowing police officers arbitrarily to detain passengers in vehicles stopped for traffic violations without any reason to believe the passenger poses a threat to safety or is involved in criminal activity violates the constitutionally guaranteed privacy rights of our citizens.

I.

The majority posits a dichotomy between two lines of cases, one holding that requiring a passenger to remain in a vehicle during a legal automobile stop is a *de minimis* intrusion on that individual's

personal liberty and thus *per se* permissible, the other holding that a passenger's constitutional rights are violated when an officer detains a passenger in a vehicle during a traffic stop without articulable suspicion that the passenger is dangerous or engaged in criminal activity.

The cases cited by the majority for the proposition that detaining a passenger· in a vehicle during a traffic stop is *per se* constitutional do not provide a strong foundation for the majority opinion to the extent that it deems such detentions permissible as a matter of course.

In the first case cited by the majority, *People v. Gonzalez,* 184 Ill.2d 402, 418, 704 N.E.2d 375, 382-83 (1998), *cert. denied,* 528 U.S. 825, 145 L. Ed. 2d 63 (1999), *superseded on other grounds, People v. Sorenson,* 752 N.E.2d 1078 (2001), the majority of the Illinois Supreme Court held that

> because the public interest in officer safety outweighs the potential intrusion to the passenger's liberty interests, it is reasonable for a police officer to immediately instruct a passenger to remain at the car, when that passenger, of his own volition, exits the lawfully stopped vehicle at the outset of the stop. We find that because the . . . risk of harm to officers . . . is present where a passenger unexpectedly exits a lawfully stopped vehicle, the officer's need to exercise " 'unquestioned command of the situation' " is likewise present. See *Wilson,* 519 U.S. at 414, 137 L. Ed. 2d at 48, 117 S. Ct. at 886, quoting *Michigan v. Summers,* 452 U.S. 692, 702-03, 69 L. Ed. 2d 340, 350, 101 S. Ct. 2587, 2594 (1981).

Notably, however, three of the seven Illinois Supreme Court justices joined in a blistering dissent stating, *inter alia:*

> The fundamental purpose of the fourth amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials. At the heart of the protections afforded by the fourth amendment is the requirement of individualized suspicion. Even in cases where obtaining a warrant based on probable cause is impractical, the police must have knowledge of sufficient facts to create a reasonable suspicion that the person in question has committed, or is about to commit, a crime. A showing of individualized suspicion is constitutionally required except in the rare case where the privacy interest implicated by the search or seizure is minimal and an important government interest furthered by the intrusion would be placed in jeopardy by

STATE v. SHEARIN

[170 N.C. App. 222 (2005)]

a requirement of individualized suspicion. The majority's abandonment of the individualized suspicion standard in this case is wholly unwarranted.

The majority gratuitously asserts that the intrusion on the passenger's liberty is minimal because the car in which the passenger is traveling has already been stopped. In so ruling, however, the majority trivializes the liberty interest at stake in this case. The only encounter many citizens of this state will ever have with the police will be a routine traffic stop. Allowing police officers to arbitrarily detain passengers in vehicles stopped for traffic violations without any reason to believe the passenger has committed a crime or threatens the safety of the police officer ensures that this encounter will be annoying, frightening, and perhaps a humiliating experience. The thousands upon thousands of petty indignities legitimized by the majority opinion will have a substantial impact on the liberty and freedom of the citizens of this state.

* * *

The right to be free from unreasonable searches and seizures is one of our most precious constitutional rights. The exercise of this right does not depend on the grace of law enforcement officials. This opinion trashes the protections of the fourth amendment.

* * *

The majority fails to articulate any reason why a police officer would be safer if a passenger in a vehicle stopped for a traffic violation is detained at the scene rather than allowed to walk away. A police officer must have a reasonable suspicion that a passenger in a vehicle stopped for a traffic violation has .committed or is about to commit a crime. This standard is more than sufficient to protect officer safety. It does no disservice to police officers to insist upon exercise of reasoned judgment.

* * *

Those who cherish their right to be free from arbitrary invasions of privacy can only hope that a more enlightened court in a future case will restore our citizens' constitutional rights which this court has today taken away.

*Id.* at 425-28, 704 N.E.2d at 385-87 (quotations and citations omitted) (Heiple, J., Harrison, J., and Nickels, J., dissenting).

Moreover, the *Gonzalez* majority, to support its holding, noted "a trend of decisions" reaching similar results and cited several cases with similar holdings. The very first case cited is *State v. Mendez*, 88 Wash. App. 785, 947 P.2d 256 (1997), a case overturned by the Washington Supreme Court in 1999 on the grounds that "[a]n officer must . . . be able to articulate an objective rationale predicated specifically on safety concerns, for officers, vehicle occupants, or other citizens, for ordering a passenger to stay in the vehicle . . . . This articulated objective rationale prevents groundless police intrusions on passenger privacy." *State v. Mendez*, 137 Wash. 2d 208, 220, 970 P.2d 722, 728 (1999). *Mendez* therefore ultimately evidences, if anything, a trend in the direction directly opposed to that taken by the majority in *Gonzalez*.

The majority here next cites *State v. Webster*, 170 Ariz. 372, 374, 824 P.2d 768, 770 (1991), wherein the majority in that case, engaging in only brief analysis, held that:

> If a passenger can be ordered out of a vehicle for the officer's safety, he can also be ordered back inside the vehicle for safety purposes. In fact, it may be even less of a privacy intrusion to order him back inside the car which is where he was prior to the stop. We cannot allow the officer's safety to depend on how fast the driver and passenger can get out of the vehicle after it has been stopped. Ordering the occupants back into the vehicle does no more than establish the status quo at the time of the stop. To hold otherwise could well lead to the unnecessary death of an officer, gunned down by those walking away who suddenly turn and fire or who circle behind the officer, either assaulting or killing him while he is talking to the driver.

Notably, however, as in *Gonzalez*, the *Webster* majority of two was countered by a dissent, authored by the chief judge of the Court of Appeals of Arizona, Division Two, and stating:

> Implicit in the court's ruling is the proposition that in every case in which police may stop a person, even for something as minor as driving with a broken taillight, they may seize anyone with the person stopped. Of course, any time a car is stopped everyone within it is stopped. It does not seem to me to follow, though, that those incidentally stopped are powerless to leave if they wish to and instead must remain involuntarily under police control until the police decide otherwise. Their detention is not supported by reasonable suspicion. The detention, if justified by considera-

tions of officer safety, has to be premised on the notion that any stop creates a significant risk that those associated with the person stopped will attempt to harm the officer. That may be true when the reason for the stop is serious criminal activity. It cannot, it seems to me, be seriously argued that because danger exists sometimes, it must be assumed always to exist so as to justify the seizure of everyone present when anyone is stopped for whatever reason. No argument is made, specific to the facts of this case, that the officer felt the seizure was necessary for his safety. He testified otherwise. Instead it is justified on the broad rule that routine seizures may occur for officer safety regardless of the facts of the case. That rule, permitting wholesale seizures without individual justification, conflicts with the fourth amendment.

*Id.* at 374-75, 824 P.2d at 770-71 (footnote omitted) (Livermore, C.J., dissenting).

In the third case cited by the majority here, *Rogala v. D.C.*, 161 F.3d 44, 53 (D.C. Cir. 1998), the officer who ordered a passenger to remain in a vehicle during a traffic stop did so explicitly on the grounds that "she was blocking traffic and interfering with the field sobriety test that [the officer] was conducting . . . ." The court therefore "conclude[d] that in the circumstances presented, it follows . . . that a police officer has the power to reasonably control the situation by requiring a passenger to remain *in* a vehicle during a traffic stop, particularly where, as here, the officer is alone and feels threatened." *Id. Rogala* does not stand for the proposition that requiring a passenger in a car subject to a traffic stop to remain in the vehicle is *per se* permissible. Indeed, in a case the majority cites for its second line of cases, *Wilson v. Florida*, 734 So. 2d 1107, 1112-13, *disc. review denied*, 749 So. 2d 504 (1999), *cert. denied*, 529 U.S. 1124, 146 L. Ed. 2d 820 (2000), the Court of Appeal of Florida, Fourth District, explicitly included *Rogala* as a case meeting the criteria of the second line of cases, which requires objective circumstances supporting the reasonableness of ordering a passenger to remain in a vehicle. *Rogala* therefore is misplaced in the majority's first line of cases.

In the final case cited by the majority, *U.S. v. Moorefield*, 111 F.3d 10, 13 (3rd Cir. 1997), the United States Court of Appeals for the Third Circuit, in a brief opinion, held that:

In view of the Supreme Court's ruling in *Wilson*, we have no hesitancy in holding that the officers lawfully ordered Moorefield to

remain in the car with his hands in the air. We follow the Court's analysis in *Wilson*. The only change in Moorefield's circumstances resulting from the order to remain in the car and put his hands in the air, was that he remained inside of the stopped car with his hands in view, rather than inside of the stopped car with his hands lowered into a passenger compartment that could potentially contain a concealed weapon. Just as the Court in *Wilson* found ordering a passenger out of the car to be a minimal intrusion on personal liberty, we find the imposition of having to remain in the car with raised hands equally minimal. We conclude that the benefit of added officer protection far outweighs this minor intrusion.

Notably, however, our own Fourth Circuit has emphasized the incompatibility of bright-line tests, such as that established in *Moorefield*, with the Fourth Amendment. *See, e.g., Alvarez v. Montgomery County*, 147 F.3d 354, 358 (4th Cir. 1998) ("The textual touchstone of the Fourth Amendment is reasonableness. When applying this basic principle, the Supreme Court has consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." (internal quotations omitted)).

In sum, the majority opinion's first line of cases does not provide a strong foundation on which to hold that North Carolinians who happen to be passengers in vehicles stopped by law enforcement may lawfully be detained as a matter of course.

## II.

The majority here states that the second line of cases it cites holds that "the Fourth Amendment is violated when a police officer detains a passenger in a vehicle during a traffic stop, unless the officer has an independent articulable suspicion that the passenger is dangerous or involved in criminal activity." I believe this overstates the holdings of the cases cited.[1]

In the first case cited by the majority, *Mendez*, 137 Wash. 2d at 220, 970 P.2d at 728, the Washington State Supreme Court does not hold that an officer must have "an independent articuable suspicion that the passenger is dangerous or involved in criminal activity" but that the officer "must . . . be able to articulate an objective rationale predicated specifically on safety concerns, for officers, vehicle occu-

---

1. I also note that both opinions cited for the second line of cases are straight concurrences.

STATE v. SHEARIN

[170 N.C. App. 222 (2005)]

pants, or other citizens, for ordering a passenger to stay in the vehicle . . . ." Indeed, the *Mendez* court made clear that the *Terry* standard of reasonable suspicion is *not* required:

> To satisfy this objective rationale, we do not mean that an officer must meet *Terry's* standard of reasonable suspicion of criminal activity. Terry must be met if the purpose of the officer's interaction with the passenger is investigatory. For purposes of controlling the scene of the traffic stop and to preserve safety there, we apply the standard of an objective rationale. Factors warranting an officer's direction to a passenger at a traffic stop may include the following: the number of officers, the number of vehicle occupants, the behavior of the occupants, the time of day, the location of the stop, traffic at the scene, affected citizens, or officer knowledge of the occupants.

*Id.* at 220-21, 970 P.2d at 728.

In *Wilson*, 734 So. 2d at 1113, the second case cited by the majority, the court held that:

> a police officer conducting a lawful traffic stop may not, as a matter of course, order a passenger who has left the stopped vehicle to return to and remain in the vehicle until completion of the stop. The officer must have an articulable founded suspicion of criminal activity or a reasonable belief that the passenger poses a threat to the safety of the officer, himself, or others before ordering the passenger to return to and remain in the vehicle.

The *Wilson* court made clear that suspicion of criminal activity was one ground for ordering a passenger to remain in a vehicle. However it also made clear, not least by endorsing *Rogala*, discussed above, that, for example, a passenger's posing a traffic hazard constitutes an objective ground for detaining the passenger in the vehicle. This holding cannot be equated with the *Terry* stop "reasonable suspicion of criminal activity" standard the majority here implies *Wilson* and *Mendez* require.

Moreover, the two cited cases are not alone in holding that officers may not, as a matter of course, order passengers in cars lawfully stopped to remain in the vehicles. *See, e.g., Castle v. State*, 999 P.2d 169 (Alaska Ct. App. 2000) (reversing the defendant's conviction of misconduct involving controlled substances and suppressing cocaine evidence where the defendant was a passenger in a stopped vehicle and was seized without justification); *Dennis v. State*, 345 Md. 649,

693 A.2d 1150 (1997) (reversing the defendant's disorderly conduct conviction where there was no basis for detaining a passenger who ignored an officer's command to remain in the vehicle), *cert. denied*, 522 U.S. 928, 139 L. Ed. 2d 255 (1997).

### III.

In the case *sub judice*, the majority's endorsement of the first line of cases renders anyone who simply happens to be a passenger in a car stopped by law enforcement for any reason powerless to leave the vehicle until law enforcement, at its discretion, decides otherwise. This holding does not comport with the Fourth Amendment or United States Supreme Court case law, which dictate that some objective reason and the availability of judicial review are required for a seizure to be lawful:

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? Cf. Carroll v. United States, 267 US 132, 69 L Ed 543, 45 S Ct 280, 39 ALR 790 (1925); Beck v. Ohio, 379 US 89, 96-97, 13 L Ed 2d 142, 147, 148, 85 S Ct 223, 229 (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e. g., Beck v. Ohio, supra; Rios v. United States, 364 US 253, 4 L Ed 2d 1688, 80 S Ct 1431 (1960); Henry v. United States, 361 US 98, 4 L Ed 2d 134, 80 S Ct 168 (1959).

*Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906 (1968) (footnote omitted). Moreover, the United States Supreme Court has instructed us that the application of privacy rights to our citizens under the Fourth Amendment is not a matter that this country leaves to the unfettered discretion of law enforcement:

> And simple " 'good faith on the part of the arresting officer is not enough.' . . . If subjective good faith alone were the test, the pro-

tections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." Beck v. Ohio, supra, at 97, 13 L Ed 2d at 148.

*Id.*

Further, while it is true that when a vehicle is stopped, passengers are by definition also stopped, it does not flow from that that the detention of passengers in the vehicle potentially for the duration of the traffic stop is a "minimal intrusion." In *Maryland v. Wilson*, 519 U.S. 408, 414, 137 L. Ed. 2d 41, 47 (1997), the United States Supreme Court held that ordering a passenger in a stopped vehicle to step out of the vehicle was a *de minimis* intrusion because the passenger was already stopped and thus "[t]he only change in [the passenger's] circumstances which will result from ordering [him/her] out of the car is that [he/she] will be outside of, rather than inside of, the stopped car." Here, in contrast, law enforcement is being empowered to dictate, at its discretion, not only the location of the passenger but also the detention and length of detention of the passenger.

I agree with the majority that officer safety must be prioritized where safety concerns exist. In this case, such concerns did exist: The traffic stop occurred relatively late at night, in a poorly lit area, and Defendant appeared agitated from the beginning. I agree with the majority that, under these circumstances, it was reasonable for the officer to decide that it was safer to have Defendant remain in the vehicle for the duration of the traffic stop.

However, the existence of threats to officer safety in some cases, as in this one, does not warrant issuing to law enforcement a carte blanche for seizing anyone present when any vehicle is stopped for any reason. Requiring law enforcement to be able to articulate some objective rationale predicated on safety concerns for officers, vehicle occupants, or others to justify ordering a passenger to remain in a vehicle during a traffic stop erects a relatively low hurdle.[2] Once law enforcement meets this hurdle, I agree that the intrusion on passenger privacy is *de minimis* when balanced against safety concerns. And where the hurdle is not met, it protects North Carolinians from groundless seizures.

---

2. Clearly, if law enforcement has reasonable suspicion that the passenger is engaged in criminal activity, an investigatory detention is constitutional.