STATE OF NORTH CAROLINA
v.
SYLVELLY DEONA WALL
No. COA07-1245
North Carolina Court of Appeals
Filed June 3, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.
Janna D. Allison for Defendant.
McGEE, Judge.
A jury found Sylvelly Deona Wall (Defendant) guilty on 21 February 2007 of carrying a concealed weapon and conspiracy to commit robbery with a dangerous weapon. The trial court sentenced Defendant to a term of twenty-five to thirty-nine months in prison. Defendant appeals.
The State's evidence at trial tended to show that Karl Christopher Parks (Mr. Parks) was the manager of a shopping center in Burlington, North Carolina. On the morning of 13 October 2005, Mr. Parks observed two men sitting on a bench outside Premier Federal Credit Union (the bank). Mr. Parks testified that the two men "were watching everybody that went in the bank." One of the men partially obscured his face with his shirt hood, and the otherman partially obscured his face with a towel. Mr. Parks also saw what appeared to be the handle of a gun sticking out of a bag between the two men. Mr. Parks was concerned that the men were planning to rob the bank, and he called the police.
Officer David Millspaugh (Officer Millspaugh) of the Burlington Police Department testified that on the morning of 13 October 2005, he responded to a call reporting two suspicious men outside the bank. When Officer Millspaugh arrived at the bank, he observed two men sitting on a bench in front of the bank. According to Officer Millspaugh:
[T]he first [man], . . . identified as Mr. Coble, was . . . wearing a white [t]-shirt, baggie pants and at the time that we arrived, he was doubled over with his hands underneath his stomach, his head in between his knees and a white towel was drapped [sic] over top of his head with the two edge flaps or the two, you know, ends of the towel down on both sides of his face. . . .
. . . .
The second [man], . . . identified as [Defendant], did, in fact, have a camouflage jacket or hoodie on with the hood pulled up and an orange ski mask on top of his head.
. . . [W]hen we arrived the ski mask was pulled up, rolled up above his eyebrow level. It was not pulled down to conceal his face at the time.
Officer Millspaugh further testified that he approached the men and repeatedly commanded Mr. Coble to "sit up and let [me] see his hands." Mr. Coble refused to sit up. Officer Millspaugh also saw that Defendant had concealed his right hand in the front pocket of his pants. Officer Millspaugh then ordered Defendant to remove hishand from his pocket. Defendant refused to remove his hand. Officer Millspaugh testified that he then conducted a Terry frisk of Mr. Coble and Defendant. During this frisk, Officer Millspaugh found a handgun in Defendant's pocket, and also found that Defendant was wearing a latex glove on his previously-concealed right hand. Officer Millspaugh then took Defendant into custody. Officer Millspaugh recalled that when these events took place, the temperature outside was "warm," possibly seventy degrees or slightly warmer.
Special Agent Jay Floyd (Agent Floyd) with the North Carolina State Bureau of Investigation testified that he questioned Defendant following Defendant's arrest. According to Agent Floyd, Defendant denied that he and Mr. Coble conspired to rob the bank. However, Defendant admitted that he and Mr. Coble were planning to rob a drug dealer who owed money to Mr. Coble. Defendant told Agent Floyd that he and Mr. Coble had arranged to meet the drug dealer in the bank parking lot, and they were waiting for the drug dealer to arrive when they were arrested. Defendant also told Agent Floyd that he had driven his 1995 BMW vehicle to the shopping center and had parked it behind a nearby business.
Officer Jeremy Paul (Officer Paul) of the Burlington Police Department testified that he located Defendant's vehicle in an alleyway near the shopping center. Officer Paul had Defendant's vehicle towed, and police later obtained a search warrant for the vehicle based on evidence they seized during Defendant's arrest. During their search of Defendant's vehicle, police found a latexglove and a pair of handcuffs with four sets of keys.
Before trial, Defendant filed a motion in limine to suppress evidence seized pursuant to Officer Millspaugh's frisk of Mr. Coble and Defendant. Defendant argued that Officer Millspaugh had no reasonable suspicion to conduct a Terry frisk of Mr. Coble and Defendant. Defendant also filed a motion in limine to exclude all evidence seized from Defendant's vehicle on the grounds that the search warrant for Defendant's vehicle was improvidently issued based on evidence obtained as a result of Officer Millspaugh's allegedly illegal frisk of Defendant and Mr. Coble. The trial court denied Defendant's first motion, concluding that under the totality of the circumstances, Officer Millspaugh had reasonable suspicion to believe that Defendant and Mr. Coble were engaged in criminal activity, and therefore Officer Millspaugh was justified in temporarily detaining and frisking Defendant as a matter of self-protection. The trial court also denied Defendant's second motion, concluding that Officer Millspaugh's frisk of Defendant was permissible, and that evidence seized pursuant to this frisk provided sufficient grounds for the issuance of the search warrant. At trial, the State introduced into evidence latex gloves, a handgun, an orange ski mask, a towel, and other items taken from Defendant and Mr. Coble during their arrest. The State also introduced into evidence the handcuffs and glove found in Defendant's car. Based in part on this evidence, the jury found Defendant guilty of one count of carrying a concealed weapon and one count of conspiracy to commit robbery with a dangerous weapon.Defendant appeals.

A.
Defendant raises two arguments on appeal. Defendant first argues that the trial court erred by denying his motion to suppress the evidence seized as a result of Officer Millspaugh's frisk. Defendant next argues that the trial court erred by denying his motion to suppress the evidence seized from his vehicle.
The State argues at the outset that Defendant has not preserved these issues for appeal. The State correctly notes that "[a] motion in limine is insufficient to preserve for appeal the question of the admissibility of evidence[.]" State v. Conaway, 339 N.C. 487, 521, 453 S.E.2d 824, 845-46, reh'g denied, 339 N.C. 740, 457 S.E.2d 304, cert. denied, 516 U.S. 884, 133 L. Ed. 2d 153 (1995). However, a party may preserve such error for appellate review if the party "object[s] to the evidence at the time it is offered at the trial[.]" T & T Development Co. v. Southern Nat. Bank of S.C., 125 N.C. App. 600, 602, 481 S.E.2d 347, 349, disc. review denied, 346 N.C. 185, 486 S.E.2d 219 (1997). The trial transcript indicates that Defendant renewed his objections set out in his motions in limine each time the State introduced disputed evidence at trial. We therefore find that Defendant has preserved his evidentiary objections for appellate review, and we address the merits of Defendant's arguments.

B.
Defendant first argues that the trial court erred by denying his motion to suppress the evidence seized as a result of Officer Millspaugh's frisk. "In reviewing a trial judge's ruling on a suppression motion, we determine only whether the trial court's findings of fact are supported by competent evidence, and whether these findings of fact support the court's conclusions of law." State v. Pulliam, 139 N.C. App. 437, 439-40, 533 S.E.2d 280, 282 (2000). Defendant has not challenged the trial court's findings of fact, and therefore they are binding on appeal. State v. Roberson, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36, disc. review denied, 358 N.C. 240, 594 S.E.2d 199 (2004). We review the trial court's legal conclusions de novo. State v. Trull, 153 N.C. App. 630, 635, 571 S.E.2d 592, 596 (2002), disc. review denied, 356 N.C. 691, 578 S.E.2d 597 (2003).
The United States Supreme Court has held that
where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
Terry v. Ohio, 392 U.S. 1, 30-31, 20 L. Ed. 2d 889, 911 (1968). When reviewing the legality of a Terry frisk, a court "must view the totality of the circumstances from the perspective of a reasonable and cautious police officer." State v. Jordan, 120 N.C. App. 364, 367, 462 S.E.2d 234, 237, disc. review denied, 342 N.C.416, 465 S.E.2d 546 (1995).
We hold that based on the totality of the circumstances in this case, Officer Millspaugh had reasonable suspicion to conclude that Defendant was involved in criminal activity and might have been armed. The trial court found, and the record reflects, that Defendant was sitting on a bench outside of a bank. Despite the warm weather, Defendant was wearing a hooded sweatshirt with the hood covering his head. Defendant also wore an orange ski mask on top of his head. Mr. Coble, who sat next to Defendant, used a towel to conceal his face.[1] Both Defendant and Mr. Coble made efforts to conceal their faces and hands when approached by police. When Officer Millspaugh made reasonable inquiries about Mr. Coble and Defendant's activities, the men were uncooperative and Mr. Coble appeared nervous. These factors, considered together, provided Officer Millspaugh with reasonable suspicion to conduct a Terry frisk of Defendant. See, e.g., United States v. Moorefield, 111 F.3d 10, 13-14 (3d Cir. 1997) (holding that police had reasonable suspicion to conduct a Terry frisk where the defendant made furtive hand movements and refused to obey officers' orders);United States v. Mitchell, 832 F. Supp. 1073, 1074-75 n.3, 1078 (N.D. Miss. 1993) (holding that police had reasonable suspicion to conduct a Terry frisk where the defendant wore a leather jacketzipped to his neck in warm weather); Thomas v. United States, 553 A.2d 1206, 1208 (D.C. 1989) (holding that police had reasonable suspicion to conduct a Terry frisk where the defendant was in possession of a ski mask on a hot July day); State v. Hernandez, 170 N.C. App. 299, 309, 612 S.E.2d 420, 426 (2005) (holding that police had reasonable suspicion of criminal activity where the Defendant acted very nervous); State v. Shearin, 170 N.C. App. 222, 227-28, 612 S.E.2d 371, 376-77, disc. review denied, 360 N.C. 75, 624 S.E.2d 369 (2005) (holding that police had reasonable suspicion to conduct a Terry frisk where the defendant refused to remove his hands from his pockets despite officers' repeated requests).
Considering all the factors discussed above, we find that Officer Millspaugh was "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" his protective search of Defendant. Terry, 392 U.S. at 21, 20 L. Ed. 2d at 906. Therefore, we hold that the trial court did not err by concluding that Officer Millspaugh had reasonable grounds to believe criminal activity was afoot, and that Officer Millspaugh was justified in temporarily detaining and frisking Defendant. Likewise, the trial court did not err by denying Defendant's motion to suppress the evidence seized as a result of the Terry frisk, or by admitting this evidence at trial.

C.
Defendant next argues that the trial court erred by denying his motion to suppress the evidence seized pursuant to the searchwarrant. Defendant contends that police obtained the evidence necessary to establish probable cause for issuance of the warrant through Officer Millspaugh's allegedly illegal Terry frisk of Defendant. Therefore, according to Defendant, the search warrant was invalid and all evidence seized from his vehicle pursuant to the search warrant should have been excluded.
As discussed above, we hold that Officer Millspaugh's Terry frisk of Defendant was constitutionally permissible. Therefore, the evidence establishing probable cause for issuance of the search warrant was properly obtained by police. We hold that the trial court did not err by concluding that the evidence seized pursuant to the Terry frisk was sufficient grounds for the issuance of the search warrant. Likewise, the trial court did not err in denying Defendant's motion to suppress the evidence seized pursuant to the search warrant, or by admitting this evidence at trial.
Defendant has not set out or argued his remaining assignments of error, and they are therefore deemed abandoned. N.C.R. App. P. 28(b)(6).
No error.
Judges TYSON and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] The current case does not require us to determine whether Officer Millspaugh had reasonable suspicion to conduct a Terry frisk of Mr. Coble. However, the circumstances of Mr. Coble's association with Defendant are relevant to our determination of whether Officer Millspaugh had reasonable suspicion to conduct a Terry frisk of Defendant.